## SULLIVAN VS. HADLEY ET AL.

Although a deed of trust confers upon the trustee the power to sell, upon failure of payment, he may resort to equity to foreclose and sell the trust property; and perhaps that would be the more appropriate course, where, by a removal of the property, the notices of sale prescribed by the trust deed could not be given.

Where the complainant's remedy is barred by limitation on the face of the bill, and he fails to allege any matter in avoidance of the defence of limitation, and the answer contains a demurrer to the bill, the objection will be fatal on the hearing.

It is a general rule, that where there is a legal and an equitable remedy, in respect to the same subject matter, the latter is under the control of the same statute bar as the former.

Where a mortgage or trust is upon slaves, and the mortgager continues in possession after default of payment, the mortgagee or trustee has the same time to bring a bill to foreclose and sell, that is allowed him, under like circumstances, to commence an action at law for the possession of the slaves: and the limitation to such action is three years.

*Appeal from the Union Circuit Court in Chancery.*

Hon. SHELTON WATSON, Circuit Judge.

CARLETON, for the appellant. This deed in trust conveyed the legal title to James Hadley, and, by construction, possession also of said slaves, and his remedy at law, by replevin or detinue, was complete to get possession, had he been deprived of it, and in such case equity has no jurisdiction. *Story Eq. Pl.* 473; *Mitf. Eq. Pl.* 123; *Cooper Eq. Pl.* 124.

He cannot found the right to come into this court on the ground alone that an advertisement in the paper mentioned in the trust, *would be ineffectual*, without an allegation, that he had applied

to defendant for his permission to publish in some newspaper published here that would be effectual, and defendant refused. Especially as defendant had, as the trustee alleges, removed from Tennessee to this State with his knowledge and implied assent.

Said note or bond, and the said trust deed, were procured by fraud and falsehood. (This point was argued at some length).

Defendant pleads and relies on the statute of limitation. The 11*th section of Revised Code*, *chap.* 41, *p.* 528, which went into force 20th March, 1839, and which was in force at the date and maturity of this contract, says: "All actions not included in the foregoing provisions shall be commenced within five years after the cause of action shall have accrued." Under this provision, a right of action on the bond and deed in trust in this case, was barred in five years from the 20th December, 1842, the date of the maturity of the bond or note, and deed in trust. *Watson vs. Higgins*, 2 *Eng.* 475; *Dickerson vs. Morrison*, 1 *Eng.* 264; *Baldwin vs. Cross*, 5 *Ark.* 510; *Couch vs. McKee*, 1 *Eng.* 484; *Campbell vs. Hawkins*, *ib.* 513; *Lucus vs. Tunstall*, *ib.* 443; *Dave ex., use, &c., vs. Sullivan*, 2 *Eng.* 449; *Walker vs. Bank Miss., ib.* 503; *Clark vs. Same*, 3 *Eng.* 220; *Wilson vs. Kelley & Co., ib.* 507; *Hensley et al. vs. Moore*, 4 *Eng.* 69; *Calvert use of Lawson vs. Lowell*, 5 *Eng.* 117.

James Hadley's right to sue in detinue or trover on his title, created by said deed in trust for said slaves, was barred by the same clause: "all other actions not included in the foregoing provisions," &c., and by parity of the reasoning in the above authorities.

And all his legal rights to sue being barred, his equitable one is also. *Kane vs. Bloodgood*, 7 *John. Ch. Rep.* 90; *Allen et al. vs. Beal's heirs*, 3 *A. K. Marsh.* 554, (*side page*); *Breckenridge vs. Churchill*, &c., 3 *J. J. Marsh.* 12; *Nurry et al. vs. Coster*, 20 *John. Rep.* 576; *Roosevelt vs. Mark*, 6 *John. Ch. R.* 266; *Sims vs. Canfields ex.*, 2 *Ala. N. S.* 555; *Humphrey vs. Terrell, ib.* 651; 2 *Story's Eq.*, *sec.* 1520, *and notes and authorities there cited*, (*4th Edition*).

MARR & HARDY, for appellees.   That complainants had a right to resort to a court of equity, for the purpose of foreclosure and sale, notwithstanding the power of sale conferred on the trustee by the terms of the trust, we refer to the cases of *McGowen vs. Bank of Montgomery*, and *Marriott vs. Givens*, decided by the Supreme Court of Alabama, at the January and June terms, 1845, in 8 *Ala. N. S.*

The statute of limitation is alone pleaded to the writing obligatory, and not to the trust : hence, though the bond is barred, or even if the trust itself is barred, the decree on this point must be for complainants.   Complainants may proceed alone upon the trust, as sufficient evidence of the debt, and need not, for any purpose, resort to the bond.   The trust itself, independent of the bond, is an admission, under seal, of the debt.   There was no necessity for producing the bond in evidence at all.   Appellant must be held to his pleading, and since he has elected to insist upon the statute as to the bond only, and not as to the trust—he must fail.   1 *Ala. N. S.* 741, 742, *Duvall's heirs vs. McLosky:* 2 *ibid.; Inge vs. Boardman* 331, 5 *S. Marsh.* 651.

The statute of limitation does not extinguish the debt, but merely bars the remedy—in other words, it simply destroys the effect or evidence of the particular instrument to which it is pleaded ; the debt or duty still remains, and if there is other evidence to which the statute is not pleaded, plaintiff may resort to it.   1 *Ala. N. S.* 741, 743; *Doe ex., dem., Duval's heirs vs. McLosky; Inge vs. Boardman,* 2 *ib.* 331; 5 *Smede & Marsh.* 651; 10 *Yerg.* 146 ; 19 *Pick.* 535 ; *Thayer vs. Mann,* 2 *Cox* 123 ; *Wassell vs. Reardon,* 6 *Eng.* 705; 2 *Smede & Marsh.* 687; 9 *Mass.* 242; 2 *Conn. R.* 161; 6 *ib.* 388.

A trustee has something more than a mere security for his debt ; he has both a *jus ad rem* and a *jus in rem*, coupled with a specific lien ; hence, the decisions in regard to liens, after the statute has run against the debt, are applicable.   1 *Ala. N S.* 742, *et seq.;* 5 *Smede & Marsh.* 651; 19 *Pick.* 535; 2 *Cox* 123.

The authorities seem to be conclusive, that although the debt secured by a trust or mortgage, is barred, yet the latter is not barred. The mortgagee or trustee has three remedies : one on the note or bond, one at law for the recovery of the possession of the property conveyed, and one on the mortgage or trust, in equity to foreclose it, and the barring of one remedy does not affect the others. 1 *Ala. N. S.* 741, *et seq ;* 5 *Smede & Marsh.* 651; 19 *Pick.* 535; 2 *S. & M.* 687, and authorities *passim.*

There is no such thing as an action at law on a trust. A party's only remedy on a trust is in equity. The statute of limitation does not apply where the remedy is alone in equity. 9 *Pick.* 242, *et seq.; Farnam vs. Brooks,* 3 *Yerg.* 201; *Armstrong vs. Campbell,* 7 *John. Ch. R.* 87; *Kane vs. Bloodgood et al.*

An express trust is such as is created by the direct act of the parties, by some writing, deed or will. Implied trusts are all those called constructive and resulting trusts. 2 *Story Com. Eq.,* *sec.* 980. The deed of trust in this case, is an express trust, but the statute of limitation does not apply to express trusts ; therefore, the statute, if pleaded to the trust in this case, would not benefit the appellant ; and *a fortiori* since it is not pleaded to the trust, he cannot be benefited by it. 2 *Story's Eq.* 467, 472; 7 *J. C. R.* 89; 20 *J. R.* 576; 9 *Pick.* 242; 1 *Yerg.* 296; *Pinson & Harkins vs. Ivey.*

When a party's remedy is concurrent at law and in equity, and the remedy at law is barred by the statute, his remedy in equity is also barred. In this case, complainants had *no* remedy *on the trust* at law, but only in equity : the remedy was, therefore, not concurrent. 3 *Yerg.* 201; 2 *Eq. D., p.* 209, *sec.* 28; 215, *sec.* 27.

The answer of Sullivan shows that he has not held *adversely* to the trustee. It is clear that if Sullivan's possession was not adverse, he held under the trustee, and the statute does not apply. The trustee, under the circumstances of this case, might, when the bill was filed, have brought his action at law to recover the possession of the trust property from Sullivan. 1 *Yerger* 296, *and authorities cited.*

PIKE & CUMMINS, for appellant. We need hardly say, that the complainant here can alone succeed upon the right disclosed in the bill. There is a general demurrer in the answer of Sullivan, which presents upon the hearing directly for consideration, every insufficiency in the bill, and in the facts, then appearing, which could prove fatal to the rights of appellee. Obviously no aid to the bill, or to the facts, can be derived from the answer or cross-bill. *Story's Eq. Pl.*, sec. 17, 28, 42, 257, 260, 261, 496, *and cases cited ; Meux vs. Anthony et al.*, 6 *Eng.* 421 ; *Cook vs. Bronaugh et al.*, 13 *Ark. R.* 183.

At law ordinarily as to choses in action, where the statute of limitations is held to bar the remedy only, the statute must be *specially pleaded.* At *law* even where the lapse of time *vested title* in the holder, the statute need *not* be specially pleaded. The party could treat his title as perfect by law, and prove it as any other title. In ejectment, this always has been the law. *Pillow vs. Roberts,* 7 *Eng.* 822 ; 5 *Eng.* 151 ; 6 *Cond. R.* 350 ; 3 *Hen. & Munf.* 57 ; 5 *Cranch* 358 ; 4 *Yerg.* 407 ; 1 *Munf.* 101; 3 *J. J. Marsh.* 268 ; 5 *Munf.* 435 ; 3 *Call* 362 ; 6 *Litt. R.* 437.

Our own statute, upon its face, declares the effect to be to *vest* an *absolute property* upon the lapse of the time prescribed. *Act December 19th,* 1846, (*Rev. Stat., p.* 943, *sec.* 3, 4.)

By this act the limitation as to negroes was *five* years, prior to that, it was *three. Sec.* 7, *ch.* 99, *Rev. St., p.* 696 ; *Payne vs. Bruton,* 5 *Eng.* 53. Of course the limit of *three* years controls this case. *

If this were a mortgage, the statute of limitations would begin to run from the forfeiture, as between mortgagor and mortgagee. There is no *direct* trust as between them. 2 *Story Eq., section* 1028*a*, 1028*b*, 1520. *Hovenden vs. Lord Annesley,* 2 *Sch. & Lef.* 607, *and cases reviewed ; Lawrence vs. Bridleman,* 3 *Yerg.* 496; 3 *Pet.* 52; 6 *Pet.* 65; 5 *Mass.* 143; 17 *Ves.* 96; 2 *Story Eq., sec.* 1520.

This must be true, for all our statutes are *positive bars,* and

rest not on mere presumption. In effect, they are like the modern English statutes. *Coote's Mort.* 449, 450, 66, 67, 518.

If it is treated as a deed of trust, perhaps the only difference is, that Hadley had a right to sue for the negroes *instantly* on the execution of the deed—was entitled to immediate possession. The statute would, in that case, attach one year earlier than if treated as a mortgage. There never was a doubt that the statute does not run as between trustee and *cestui que trust*. Here Sullivan, if trustee at all, was only so by implication, not directly. The *trustee* was Hadley himself, and the *cestui que trust*, were the creditors, secured. Except, as between them, the statute would run. *Hill on Trus., p.* 503 ; 8 *Humph.* 563 ; 6 *Ham.* 96; *Doe ex., dem., &c. vs. Lightfoot,* 8 *Mess. & Wel.* 553 ; 1 *Bro. C. R.* 554 ; 17 *Ves.* 87.

It is a mere perversion of all principle to say that where property is conveyed in trust to pay debts, the statute never attaches upon the *property.* That is only true as between trustee, and *cestui que trust.* It is not true, as between persons not standing in a fiduciary relation to each other. *Hill on Tr.* 503. As between trustee and *cestui que trust,* it is true, neither the debt can be barred, nor title to the property transferred by statute. But the statute does attach, even in cases of trusts, *wherever there is a remedy at law.* 7 *J. C. R.,* 110, 111 ; 1 *Watts & Sergt.* 118 ; 15 *Wend.* 302 ; *Robinson vs. Cook,* 4 *Mas.* 150, *&c. ; Serwood vs. Sutton,* 5 *Mas.* 146, *&c; Denton's ex. vs. Embry vs. Young,* 5 *Eng.* 228.

There was a perfect remedy *at law,* all the while for all *relief,* complainant *now seeks* or *can have.* There never has been any obstruction to such remedy.

The idea of a *tenancy* and holding under mortgagee, when mortgagor is in possession, is mere *fiction,* and only prevails for some purposes. *Christophers vs. Sparke,* 2 *Jac. & W.* 234 ; *Cholmondeley vs. Clinton, ib.* 179 ; *Jackson ex. dem. vs. Wood,* 12 *J. R.* 242 ; *Angell on Lim., p.* 490, 1, 2 ; *Coote on Mort.* 518.

Mr. Chief Justice ENGLISH delivered the opinion of the Court.

This was a bill to foreclose a trust deed, or mortgage, with a power of sale.

The bill was filed on the 4th day of September, 1850, in the Union Circuit Court, by James Hadley, the trustee, against Lee Sullivan, the maker of the deed, and alleges, in substance, as follows :

That, on the 20th December, 1841, in Tipton county, State of Tennessee, Lee Sullivan, then (as well as complainant) a resident of said county of Tipton, executed to complainant as trustee, a deed of trust, by which, after reciting that the said Lee Sullivan was indebted to John L. Hadley, of Green county, Alabama, in the sum of $629 88, due by writing obligatory of that date, to O. H. P. White, by two notes for about $21, and by open account, due first January, 1842, for about $30, and to sundry other persons in small sums, by notes, accounts, &c., the names of whom, and the sum due to each, being stated; and the said John L. Hadley, and the other creditors named, being willing to wait twelve months longer, with the said Lee Sullivan, upon having their debts and interest secured, and the said Lee Sullivan being willing to give them a certain assurance that their money should be paid at the expiration of twelve months from the date of the trust deed, he, the said Lee Sullivan, as well in consideration of securing his said creditors, in the payment of their demands, with interest, as for the further consideration of one dolllar, &c., granted, bargained, sold, assigned, tranferred and set over, unto the complainant, his heirs and assigns, the following property, then in the possession, and under the control of said Lee Sullivan in said county of Tipton, to wit : a negro woman *Easter*, and her five children, Hardy, Gabriel, William, Sarah, and Rossilla, slaves for life, &c., one sorrell horse, a bay mare, all his household and kitchen furniture, one wagon, carryall, barouche, and six spinning machines : to have and to hold said slaves and other property unto said complainant, his heirs and assigns forever,

*in trust however* and to the intent and purpose, that if all the claims set forth in said deed of trust, with lawful interest, should not be paid off, and fully discharged by the said Lee Sullivan, or some other person for him, before the expiration of twelve months from the date of the execution of said deed of trust, that complainant should, in the execution of the trust conferred upon him by the deed, and accepted by him, advertise said property, for twenty days, in a newspaper published in Memphis, Tennessee, (*Memphis Enquirer*), and by posting up written notices at four of the most public places, in said county of Tipton, for sale to the highest bidder for cash, &c.

That it was further stipulated in said deed, that if said debts, &c., were not paid on the day appointed for such sale, complainant, as such trustee, should proceed to sell the trust property to the highest bidder for cash, and make bills of sale thereof to the purchasers, conveying to them all the right and title of the said Lee Sullivan, his heirs, &c., therein : the deed of trust to be void, and of no effect, if the debts secured thereby should be paid off before the day of sale. That the trust deed was duly acknowledged on the 27th day of December, 1841, and on the same day recorded in the Register's Office of Tipton county, Tennessee, and on the 26th day of August, 1844, duly recorded in the office of the Recorder of Union county, Arkansas.

The deed, with the several certificates of acknowledgment and registration thereto attached, is exhibited with the bill.

The bill further alleges, that said John L. Hadley and the other creditors of Lee Sullivan, named in the deed of trust, reside beyond the limits of this State. That in the month of October, 1844, complainant, out of his own means, paid to O. H. P. White, one of the creditors, $16 05 on the claims of said White, secured by the deed, which sum with interest, complainant submits that he is entitled to have refunded to him out of the trust fund. White's receipt is exhibited.

That in the year 1843, O. H. P. White, an execution creditor of Lee Sullivan, caused one of the slaves, included in the trust

deed, to be levied upon, and that complainant believing it to be his duty to protect the trust property, filed a bill for injunction, and procured a release of the slave from execution, and was obliged to pay counsel therefor a fee of $25, which sum, with interest, complainant claims that he is entitled to have re-imbursed to him out of the trust fund: as well as $1 95 paid by him for acknowledging and recording the trust deed. The receipt of the counsel for the $25 is exhibited.

That, after the expiration of the twelve months forbearance, mentioned in the deed, the notice and sale therein required, were not given or had, because the creditors of defendant were unwilling to harrass him, and were willing to, and had indulged him, and continued to indulge him to the time of filing the bill.

That, in February or March, 1844, the defendant removed from the State of Tennessee to the county of Union, in this State, and brought with him the property mentioned in the deed, by the implied consent and sufferance of complainant; and that defendant, by consent of complainant, and under said trust, had retained and still kept possession of the property. That in consequence of the removal of the property, as well as of complainant and defendant, to the county of Union, it was inconvenient, and would fail to accomplish the object of the parties to the trust deed, for complainant to give notice of sale, at the several places, and in the manner required by the terms of the trust; and hence, complainant applied for the aid of the court of chancery.

That, since the removal of the property to Union county, Pierce, a judgment creditor of defendant, on the —— day of ——, 1845, caused an execution to be levied upon one of the slaves embraced in the trust deed. That complainant, as in duty bound, and at the instigation of defendant, by an attorney, who acted at the request of both complainant and defendant, caused the sale of said slave to be forbidden, and notified the sheriff of the claim of complainant to the property. That defendant had repeatedly, and at divers times, within the last five years, acknowledged the said trust, and particularly the debt due to John L. Hadley, and

10B

had been holding the property subject to said trust, and had kept off his other creditors from collecting their claims out of his property, by means of said deed of trust.

That the creditors mentioned in the deed of trust, and particularly John L. Hadley, were unwilling longer to indulge the defendant, and insisted upon the collection of the several claims; and that John L. Hadley had particularly instructed complainant to take steps necessary to close said deed of trust as soon as possible. That the debts mentioned in the deed of trust, with the sum paid White by complainant, and also the sums of money paid by complainant, out of his own funds, together with a considerable arrear of interest thereon, remained unpaid, and the trust unsatisfied, and still in force. And the complainant being desirous of having the claims paid off, and the trust discharged, had several times applied to the defendant for payment thereof, as had also the said John L. Hadley, but the defendant had failed to pay the same, although he had repeatedly promised to do so, and had several times, within the last five years, acknowledged that he owed the said debts, and had but recently, and after complainant was instructed to close the trust, pretended that said debts, and particularly that due to John L. Hadley, was unjust, and refused to pay the same.

Prayer, that defendant be required to answer, &c., and particularly whether he had not repeatedly acknowledged verbally, and by letters, the debt due to John L. Hadley, and promised to pay the same, within the last five years, &c. That an account might be taken of what was due, principal and interest, to John L. Hadley, the other creditors, and to complainant for money advanced, expenses of the trust, &c., and that defendant be decreed to pay the same, with costs, &c., by a day to be fixed, and that in default thereof, the trust property be sold for that purpose, and for general relief.

The defendant, Lee Sullivan, admits in his answer to the bill, the execution and registration of the trust deed, as alleged by the complainant. He avers that the obligation to John L. Had-

ley, mentioned in the deed, was obtained from him by misrepresentation, fraud, and without consideration, setting forth the facts upon which this allegation is based. The pleadings and evidence in reference to this feature of the defence, constitute the principal portion of the record. The answer is made a cross-bill against John L. Hadley, &c., who positively denies that the obligation was procured by such misrepresentation, fraud, &c., and states the consideration upon which it was executed. His version of the transaction is sustained by the decree of the court below, and we think by the preponderance of the testimony; and with this remark, this branch of the defence may be dismissed from further consideration.

Lee Sullivan further answers, that he executed the notes; and, at the time of the making of the trust deed, owed the accounts, mentioned in the deed, and insists that they shall be produced and filed for cancellation upon the final decree, and that all the trust creditors were necessary and proper parties to the bill.

He avers, that he had paid all the trust debts, except the obligation to John L. Hadley, which was fraudulent, &c.

And this defendant further says and avers, that the cause of action arising on the said several notes and accounts in the said deed of trust specified, did not accrue to the said John L. Hadley, &c., (naming each of the creditors), "within five years next before the said complainant exhibited, and filed his bill of complaint, and commenced his suit herein."

"And this defendant further says and avers, that he did not promise and undertake to pay to the said John L. Hadley," &c., (naming each of the other creditors) "the said several notes and accounts in the said deed of trust specified, within five years next before the said complainant exhibited his said bill, &c., and that said *cestui que trusts*, are all residents of Alabama and Tennessee."

Avers that if complainant paid White the $16 05, he did it without authority, and in his own wrong, because the whole of White's debt had been paid by defendant.

Denies that there was any necessity for complainant to pay the counsel's fee of $25 to protect the trust property from execution, &c.

Does not know that complainant paid for the acknowledgment and registration of the deed, and requires proof thereof, &c. Admits that no notice was given, or sale made in Tennessee, in pursuance of the requirements of the deed of trust, and that the trust had not been closed. Admits that he removed to the county of Union, in the year 1844, and brought with him the slaves, and some of the other property, specified in the deed ; but denies that it was with the implied consent, and sufferance of complainant, and avers that it was with his express assent, knowledge, and approbation. Admits that defendant has the property in possession, and waives the necessity of notice, or sale, in Tennessee, in pursuance of the terms of the deed.

Admits that he caused the sale of the slave levied upon, by the the sheriff of Union county, under the execution in favor of Pierce, to be forbidden, and the sheriff to be notified of said deed of trust, as alleged in the bill, but insists that he did not thereby, recognize the justness of said deed of trust as between defendant and said John L. Hadley, or waive any right as against him.

Admits that he may have, within the last five years, acknowledged the existence of the deed of trust, but denies that he had, at any time within that period, acknowledged the justness of the deed of trust, and the debt supposed to be due to said John L. Hadley, and held his property subject to said trust, and kept his creditors from collecting their debts by reason thereof.

Denies that any of the trust creditors except Hadley had instructed or desired complainant to file the bill, and again avers that all the creditors had been paid, but Hadley, whose claim was fraudulent.

Avers that complainant is indebted to him in about the sum of $400, and pleads this as a set-off against any sum that may be allowed complainant, exhibiting a bill of particulars.

"And this defendant further says and avers, that the said com-

plainant has not made or stated such a cause in and by his said bill of complaint, as entitles him to any such relief, as he, by his said bill, has prayed from and against this defendant, and he prays that, upon the final hearing of this cause, he may have the same advantage, as upon demurrer interposed in due form."

The answer is made a cross-bill against complainant and the trust creditors, with a prayer that they be compelled to answer, &c., for decree against complainant for any excess of indebtedness, that may be found to be due from him to defendant, and that the trust creditors be perpetually enjoined from further proceedings upon the trust deed, &c. Special interrogatories are propounded to complainant, in reference to his alleged indebtedness to defendant and to John L. Hadley, in relation to the consideration upon which the obligation to him was executed.

John L. Hadley was made a party to the bill by consent. None of the other creditors were made parties.

He states, in his answer to the cross-bill, that he was the uncle of the defendant, Lee Sullivan. That the obligation specified in the trust deed as due to him, was executed for costs, attorneys fees, expenses, &c., incurred by him in prosecuting a claim to some slaves at the instance and for the benefit of Lee Sullivan; that the trust deed was taken in good faith to secure the payment of the debt, and that he had indulged Sullivan in consequence of his being a relation, &c.

He submits that the note is not barred, but that it is quite immaterial whether it is or not, that he is pursuing his remedy, on the trust deed, and that his rights are dependant on the statute of limitation applicable to it.

He insists that he had three remedies: a suit upon the note, an action at law for the trust property, and a bill to foreclose, and that the statute of limitations, applicable to any one of his remedies, had no application to the other. That the statute of limitations is only a bar to the remedy, and not a destruction of the debt, but mere evidence of it. That the trust deed is evidence of the debt without resort to the note, and that any bar to

the note in no wise affects the debt, or bars evidence under seal of its existence.

That the bar interposed by Sullivan, is to the note only, and not to the trust deed. That Sullivan had, within five years, promised to pay the note.

The draftsman of the answer seems to have been under the impression that the *note* referred to, was not under seal, but it is a writing obligatory, due 20th December, 1841, the date of the trust deed.

The answer of James Hadley to the cross bill, denies that he is indebted to Lee Sullivan in one cent—on the contrary, he avers, that they had a full settlement of all their matters in March, 1844, and Sullivan was found to be indebted to him, &c.

No written acknowledgment of, or promise to pay the debt of John L. Hadley, by Lee Sullivan, subsequent to the date of the trust deed, was proven.

*R. W. McHenry's* deposition was taken by the parties on the *9th of April,* 1852. He states as follows : "He heard Lee Sullivan say, that in consequence of a heavy law suit he lost, he had become involved in debt, and that Dr. Hadley (John L.,) his uncle, had advanced him money, (witness understood Dr. Hadley lived in Alabama), for which he had given him a mortgage on his property, and if he could make one or two good crops, he could pay out, as that was about all he owed. All this conversation took place some three, four, or five years ago ; not exceeding five years ago, from this time."

*Harriet McHenry* testified that Lee Sullivan moved to Arkansas, in the year 1844, and that he left Tennessee with his negroes, with the knowledge, and in company with James Hadley. That in 1846, she heard Lee Sullivan say that he was doing all he could to pay the amount due on Dr. Hadley's deed of trust. That in the year 1841, John L. Hadley and defendant met at James Hadley's, in Tennessee, for the purpose of getting him to act as trustee in the deed of trust, &c.

*Holmes* testified, that about the 9th March, 1843, an officer of

Tipton county, levied an execution upon one of the slaves embraced in the trust deed, in the absence of Lee Sullivan and his white family, and that at the instance of James Hadley, the trustee, witness, as an attorney, filed a bill to enjoin the execution, for which he charged $25, and Hadley gave him his note for the amount, which he afterwards paid, with interest, on the 30th December, 1844.

A letter from Lee Sullivan to John L. Hadley, dated July 11th, 1846, was made part of the evidence in the cause. In this letter Sullivan gives a detailed account of his pecuniary affairs, prospects, &c., but makes no reference to the trust deed, or to Hadley's debt. There is no other evidence in the cause, material to the defence of limitation, which is the main question to be determined.

The court decreed, upon the bills, answers, exhibits, replications, and depositions, that the cause of action was not barred, &c.; that Lee Sullivan was indebted to John L. Hadley, upon his trust debt, principal and interest, from the 20th December, 1841, in the sum $1064 49; and to James Hadley in the sum of $25, for so much money, necessarily and properly advanced by him, on the 9th March, 1843, in the protection of the trust property, with $15 50 interest, making $40 50, and that Sullivan presently pay the sums, so found due with the costs of the suit, or that the slaves mentioned in the trust deed, be sold for that purpose, &c., authorizing the issuance of process, to obtain possession of the slaves, &c. Sullivan appealed from the decree.

Though the trust deed conferred upon James Hadley, the trustee, the power to sell the property, on the failure of Lee Sullivan to pay the trust debts, at the end of twelve months from the date of the deed, yet it seems that the trustee might resort to equity to foreclose and sell; and the removal of the property from Tipton county, Tennessee, where, according to the terms of the deed, the notices of the sale were to be posted up, &c., perhaps rendered the application for the aid of the chancellor the more appropriate course. *Bennett et al. vs. Union Bank et al.*, 5

*Humph.* 612; *Ford vs Russell, Freem. Ch.* 42; *Marriott et al. vs. Givens,* 8 *Alabama R.* 706; *McGowan et al. vs. Br. B. Mobile,* 7 *Ala. R.* 823; *Dig. Stat. Ark., ch.* 110, *sec.* 4.

There is nothing, therefore, in the objection, that the court below had no jurisdiction in the cause.

Was the right to foreclose the deed, and sell the property, for the payment of the debt of John L. Hadley, the only trust creditor, for whose benefit the bill appears to have been prosecuted, barred by the statute of limitations?

The remedy is sought in our forums, and by our laws it must be governed. No statute of Tennessee, where the contract was entered into, is proven, or relied upon as affecting the rights of the parties in any way.

When a mortgage is executed upon land, and the mortgager remains in possession of the property, on the maturity of the debt, the mortgagee has three remedies: 1st. A suit at law upon the bond, bill, note, account, or other evidence of debt. 2nd. An action of ejectment, to obtain possession of the mortgaged premises, and take the rents and profits until the debt is thereby extinguished: and 3d. To bring a bill in equity to foreclose, &c. *Smith et al vs. Robinson,* 13 *Ark. R.* 538; *Earle et al. vs. Byrd et al.,* 14 *Ark. R.* 499; 1 *Alabama R.* 744; *Price vs. State Bank,* 14 *Ark. R.* 50.

If the mortgagee bring an action upon the bond, bill, note, account, or other evidence of debt, the limitation to the action would be governed by the grade of the instrument sued upon as the foundation of the action. If he resort to an action of ejectment, to obtain possession of the land, the limitation applicable to such action, would be the bar, which, under our general statute, is ten years. *Digest, ch.,* 99, *sec.* 1, &c.

But if he bring a bill to foreclose the equity of redemption, and sell the land for the satisfaction of the debt, secured by the mortgage, what is to be taken by the court of equity as the period of limitation, when there is no statute expressly fixing the lapse of time, which shall bar a suit to foreclose?

As a general rule, the court of equity would hardly adopt, as the period of limitation, that which is applicable to the action at law upon the debt, because that may be evidenced by an unsealed instrument, while the mortgage, upon which the bill to foreclose is founded, and which is also evidence of the debt, is under seal, and an instrument of a higher grade. See *Miller adm. vs. Helm. et al.*, 2 *Sm. & Marsh.* 687; *Miller vs. Trustees of Jefferson College*, 5 *ib.* 651; *Doe ex. dem. Duval's heirs vs. McLasky*, 1 *Ala. Rep.* 744, *and cases cited; Inge et al. vs. Boardman*, 2 *ib.* 331. These cases stand upon the principle, that when a party has two remedies, one of which is barred, and the other is not, he may successfully pursue that which is not barred.

But it seems to be settled that the courts of equity have adopted, as the period of limitation to a bill to foreclose and sell land, the length of time which is allowed the mortgagee to bring ejectment in order to obtain possession of the land and satisfy his debt out of the rents and profits. 4 *Kent. Com.* 189, 190; 2 *Story's Equity*, sec. 716; *Hughes vs. Edwards*, 9 *Wheat. R.* 497; *Doe ex. dem. Duval's heirs vs. McLasky*, 1 *Ala. R.* 745, and the same period is allowed the mortgager to redeem.

So in *Moore & Cail adm. &c. vs. Anders*, 14 *Ark. R.* 629, where the limitation on the bond was five years, Mr. Chief Justice WATKINS held, that, inasmuch as our statute allowed the mortgagee ten years to bring ejectment, he had a like period to foreclose, &c.

But the mortgage or trust deed, in the case before us, is not upon land, but upon slaves, and other personal property. The decree was for the sale of the slaves only. What statute of limitations is to be regarded as applicable to the remedy here sought in equity? The debt to John L. Hadley is evidenced by a writing obligatory, dated and due on the 20th December, 1841. The limitation applicable to an action at law upon it, was five years. *Revised Statutes*, ch. 91, sec. 11; *Baldwin vs. Cross*, 5 *Ark.* 510; *Dickinson vs. Morrison*, 1 *Eng. R.* 264; *Lucas vs. Tunstall*, *ib.*

443; *Couch vs. McKee, ib.* 484; *Hawkins vs. Campbell, ib.* 513 ; *Davis ex., use, &c. vs. Sullivan,* 2 *ib.* 449; *Bird vs. Smith,* 3 *ib.* 368; *Calvert, use, &c. vs. Lowell,* 5 *ib.*

It follows, that on the 4th day of September, 1850, when the bill was filed, and process issued, an action at law upon the bond was barred. The pleadings and evidence in the cause show no part payment upon the bond, and no written promise to pay, or acknowledgment of the debt, subsequent to the execution of the trust deed, on the part of Lee Sullivan. Verbal acknowledgments and promises would not extend the period of limitation, or revive the debt. *Dig., ch.* 99, *p.* 698, *sec.* 18, 19; *Ringgold & Hynson vs. Dunn,* 3 *Eng. R.* 497 ; *Grant adm. vs. Ashley,* 7 *Eng.* 762; 5 *ib.* 134; 4 *ib.* 450; 5 *ib.* 638; 6 *ib.* 29.

It seems that John L. Hadley was a non-resident of this State when the bond was executed, and so continued to the 4th September, 1850. But the exception in favor of non-residents, made by the 13*th section, Revised Statutes, chapter* 91, was repealed by act of 14th January, 1843, and the limitation ran against his debt from the date of the repealing act, (*Watson vs. Higgins,* 2 *Eng. R.* 475) in the absence of any showing to bring it within the exceptions made by the act of December, 14th 1844. *Dig., ch.* 99, *sec.* 12, 13, 14, 15. See, also, *Calvert use Lawson vs. Lowell,* 5 *Eng. R.* 147; *Brian vs. Timms, ib.* 597.

But to return to the question, as to what statute of limitation is to be regarded as applying to the remedy sought in this case in equity.

It is a general rule, that where there is a legal and an equitable remedy, in respect to the same subject matter, the latter is under the control of the same statute bar as the former. *Kane vs. Bloodgood,* 7 *John. Ch. R.* 117 ; *Harris vs. King,* present term.

*Humphries vs. Terrell,* 1 *Ala. R.* 650, was a bill by a mortgager to redeem slaves from the possession of the mortgagee. The defendant relied upon the limitation applicable to the action of detinue, as a bar to the bill. GOLDTHWAIT, Judge, said : "The com-

plainant seeks to avoid the plea of the statute of limitations on the ground, that the defendant is a mere trustee ; and, as such, unaffected by the lapse of time. The only cases which are not barred by lapse of time, are those which arise out of trusts, which are, peculiarly and exclusively, the creatures of a court of equity." *Maury's adm. vs. Mason's adm.* 8 *Porter* 211. After stating the relation which exists between the mortgager and mortgagee, and the nature of the contract, he proceeds :

"It is equally true, however, that equity will not always listen to a claim to redeem. If a mortgager, &c., lies by, and will make no attempt to redeem within the period, within which any title, however good, will be barred by lapse of time, a court of chancery cannot, indeed, it ought not, to relieve; this is the well settled rule with respect to real estate, and if a moatgagee has been in possession of the mortgaged premises for twenty years," (*ten in Arkansas.* See *Moore & Cail vs. Anders*, 14 *Ark.* 628) "taking the profits without any account, or act done by which he admits himself to hold them as a qualified estate, the equity of redemption will be presumed to be extinguished, or to have been abandoned by the mortgager, and a bill to redeem will not be entertained by a court of equity.

This rule is adopted by courts of equity, not in obedience to the statutes of limitation, but in analogy to them, and from the obvious necessity which exists that some lapse of time should quiet the possession. All the reasons of the rule apply with as much force to personal as to real estate, and if it has been considered judicious to make a shorter period of time applicable, as a limitation to a suit for the former, it is the duty of a court of equity to adapt its decisions to the recognized rules of law. A claim to personal estate is barred at law after the lapse of six years, no matter how imposing it may be; and what reason is there that a court of equity should open its doors to relieve a suitor, who, under similar circumstances, is banished from a court of law ? We know of none. And it may be added, that an equitable claim not resting on a trust *exclusively*, the *creature* of a *court of equity*, which has not

had sufficient merit to induce a prosecution within six years, ought, after that period, to rest forever."

In *Sims vs. Canfield exr.*, 2 *Ala. R.* 555, which was also a bill to redeem slaves, and the limitation applicable to detinue was relied upon as a bar, it was held that where slaves have been possessed under a claim of title for a period analogous to the statute of limitations, the possession operates not only as a bar, but also invests the possessor with the absolute title. That the action of detinue (in Alabama) is the only one at law, analogous to a bill to redeem a specific chattel, and so far as the statute of limitations can have any bearing on such a bill, it is to be considered precisely as if it was an action of detinue at law.

In *Fenwick vs. Macey's exrs.*, 1 *Dana* 276, the court being divided, the same doctrine is, to some extent, recognized, and to some extent disavowed; but the disavowal is based upon a dissent from the rule, that equity adopts the statute of limitations applicable to ejectment, in fixing the period allowed for a bill to foreclose and sell land, or to redeem. The current of decisions, however, sustains this doctrine, and we have seen that this court has adopted it in *Moore & Cail vs. Anders.*

Assuming, therefore, by analogy to the rule applicable to mortgages upon land, that where the mortgage, or trust deed is upon slaves, and the mortgager continues in possession, after default of payment, that the mortgagee or trustee, has the same time to bring a bill to foreclose and sell, that is allowed him, under like circumstances, to commence an action at law for the possession of the slaves, we shall proceed upon this hypothesis to determine whether the bill in this case was barred by such limitation.

The trust deed was executed by Lee Sullivan to James Hadley, as trustee, 20th December, 1841, to secure the payment of the debt to John L. Hadley and others, with power to sell the property for the satisfaction of the debts, after the expiration of one year, on default of payment. The maker of the deed remained in possession of the property; and, from the nature of the instru-

ment, it was, doubtless, the intention of the parties, that he should continue in possession until he was in default.   After the expiration of the year, Sullivan failing to discharge Hadley's debt, the trustee had the right to take possession of the property, and sell so much of it as was necessary to pay the debt, &c.   If it was necessary, he had the right to bring an action at law for the possession of the slaves, &c., to enable him to sell them, and transfer them to the purchaser; and no demand, it seems, need have been made before suit; (*Smith et al. vs. Robinsin*, 13 *Ark.* 538; *Evans et al. vs. Merriken*, 8 *Gill & John.* 47,) and, in such action, the trust deed would have been evidence of his title; or he had a right, as we have seen, to resort to a court of equity to compel the surrender of the property, and obtain a decree for its sale to satisfy the debt.

The right of action accrued on the default, 20th December, 1842, *Pickard vs. Low*, 15 *Maine R.* 48; *Ingraham vs. Martin*, *ib.* 373.   There is no allegation in the bill or evidence, that Sullivan remained in possession of the slaves, after default, under any new agreement or contract with the trustee, or *cestui que trust*, for delay of payment or sale.   The bill puts it on the ground of indulgence, on the part of John L. Hadley, prompted by a disposition not to harrass Sullivan.   The trustee seems to have acted, finally, under instructions from the creditor, to take steps to close the trust, given shortly before the filing of the bill.

Such is the inference from the allegations of the bill.   Mere indulgence, on the part of the trustee or creditor, would not prevent the running of the statute, in the absence of any act, on the part of Sullivan, to prevent it.

On the default, the trustee might have brought replevin or detinue for the slaves.   Three years was the limitation to the former action.   *Revised Statutes, chap.* 91, *sec.* 6; *Digest, chap.* 99, *sec.* 7; *Payne vs. Bruton*, 5 *Eng. R.* 54.   Upon principle, the same period was the limitation to detinue.

In the absence of any act, therefore, on the part of Sullivan, recognizing the right of the trustee to the slaves after the default,

three years would have barred their recovery, by the act of limitation then in force.

The bill alleges, and the answer admits, that Sullivan brought the slaves to Union county, in February or March, 1844, with the knowledge and consent of the trustee, where the deed was recorded in August of the same year; but, at whose instance, does not appear. That, in the year 1845, (the month is not stated) one of the slaves was levied upon by the sheriff of Union county, under an execution, in favor of a creditor of Sullivan, and that the trustee, at the instance of Sullivan, notified the sheriff of the existence of the deed, and forbid the sale of the slave. Though such verbal recognitions of the trust would not remove the bar to an action on the bond for the debt, as we have seen, yet they tended to show that Sullivan was not, at that time, holding the slaves adversely to the right of the trustee, and had the bill been filed within three years afterwards, our inclination would be to hold that it was not barred, though the effect of such verbal admissions would be greatly weakened by the decision of this court in *Prater adm. vs. Frazier and wife*, 6 *Eng. R.* 249, if applicable to such case in equity. But it does not appear that the bill was filed within even *five* years after the sale of the slave was forbidden by the interposition of the trustee, at the instance of Sullivan; nor is there any allegation in the bill, that Sullivan, in any way, verbally or in writing, recognized the claim of the trustee to the slaves, or that they were held subject to the trust at any time within *three* years next before the bringing of the bill. The answer contains a demurrer to the bill; and, on the hearing, this objection was fatal. *Meux vs. Anthony et al.*, 6 *Eng. R.* 425; *Cook vs. Bronaugh, et al.*, 13 *Ark.* 183; *Story's Eq. Plead.*, sec. 28, 257, 260, 496, 523, 751.

Nor is the bill aided by the proof in the cause. Harriet McHenry stated that, in 1846, she had heard Sullivan say "he was doing all he could to pay the amount due on Dr. Hadley's deed of trust."

R. W. McHenry deposed, that he heard Sullivan say that he

had given Dr. Hadley a ͵mortgage on his property, and if he could make one or two good crops, he could pay out—that "this conversation took place some *three*, four, or *five years* ago, not *exceeding five years ago from this time*," (9th of April, 1852.)

If these declarations could be held as a recognition of any right in James Hadley, the trustee, to the slaves under the deed, the witnesses do not prove that they were made at any time within three years before the filing of the bill, (4th Sept. 1850.)

The memory of the last witness swept over too many years to be relied upon in the settlement of important legal rights, and such loose testimony shows the propriety of the policy of our legislation, and the course of our decisions, which tend to disallow verbal admissions, or promises, to remove the bar, and revive debts, or divest property acquired by lapse of time.

It is not insisted in the argument for Hadley, that the act of December 19th, 1846, (*Digest, chap.* 153, *art.* 1, *sec.* 3-4,) making the possession of slaves for five years after its passage, a bar to any action for them, would have applied to an action of detinue or replevin, brought for the slaves in question, on the 4th of September, 1850. There is nothing in the pleadings or evidence that could make this statute applicable, and the course of decisions of this court forbids its application. See the cases above cited, as well as *Calvert, use, &c. vs. Lowell,* 5 *Eng.* 147; *Biscoe et al. vs. Stone et al.,* 6 *ib.* 39; *Mason vs. Howell,* 14 *Ark.* 199; *Bank of the State vs. Gray et al.,* 13 *ib.* 39; *State Bank vs. Conway, ib.* 344; *Woods vs. State Bank,* 7 *Eng.* 693.

It would seem, therefore, from the pleadings and evidence in this case, that on the 4th September, 1850, when the bill was filed, the right of John L. Hadley to maintain an action upon the bond, and of James Hadley, the trustee, to bring an action for the possession of the slaves, was barred by the statutes of limitation, applicable to such actions.

STORY says: (*Eq. Plead., sec.* 716,) "If an equitable title is not sued upon until after the time within which a legal title, of the same nature, ought to be sued upon, to prevent a bar by the statute of

limitations, courts of equity, acting by analogy to the statute, will not entertain it. For, in courts of equity, lapse of time is emphatically an ingredient in regard to entertaining suits for relief. If the party be guilty of such laches in prosecuting his equitable title, as would bar him, if his title were solely at law, he will be barred in equity," &c.

In determining the period allowed to the trustee to bring his bill for foreclosure and sale of the slaves, if the court of equity is to be governed by the statute, applicable to the action upon the bond, the remedy in chancery was barred on the 4th September, 1850.

If the court is to be governed by the limitation, applicable to the action of replevin, or detinue for the possession of the slaves, the remedy in equity was equally barred.

If the court is to look to the deed of trust, as a sealed instrument, and as evidence of the debt, it is of no higher grade than the bond: it was executed at the same time, and although it matured a year afterwards, if it could have been made the foundation of an action at law, the same statute of limitation which applied to the remedy upon the bond, would have applied to it. There is no ground, therefore, upon which the case can be put, so as to maintain the right of the trustee to resort to equity, after such delay, to compel Sullivan to surrender the slaves to be sold for the satisfaction of the debt of John L. Hadley.

This may, perhaps, be one of the cases in which the enforcement of the statute of limitations works a hardship upon an indulgent creditor, but general rules of law cannot be warped for the purpose of excepting individual cases. "Partial evil" may be "universal good."

The objection of Hadley's counsel, that limitation was pleaded to the debt, and not to the bill to foreclose, is rather technical than substantial. The object of the bill was to enforce the payment of the debt, by a sale of the slaves, and the defendant manifestly intended to interpose the statute bar to the relief sought. But if the objection were good, it does not aid the complainant's bill, which we have stated was demurrable.

The $25 paid by James Hadley, the trustee, in 1843, for the protection of the trust property, as he alleges, was paid, not for the benefit of Sullivan, but for the benefit of the *cestui que trust*, and the remedy upon the trust deed, to enforce the payment of the claim of the creditor, being barred by lapse of time, it follows that the demand of the trustee, for expenses, falls as an incident.

The decree of the court below is reversed, at the costs of the appellees, and the cause remanded, with instructions to dismiss the bill for want of equity, and that the costs which accrued at the instance of John L. Hadley, in the attempt to enforce the collection of his debt, be taxed to him; that the costs incurred at the instance of James Hadley, to enforce his individual demands, be taxed to him; but as the record has been much encumbered by Sullivan, in an unsuccessful attempt to avoid the debt of John L. Hadley, on the grounds of fraud and want of consideration, it is deemed but just that he should pay all costs accruing on account of this branch of the defence, and the chancellor will so decree.