## Lawson's ad. vs. Badgett.

An execution against the complainant came to the hands of defendant, as sheriff— after the return of the execution, the complainant paid to the defendant, who assumed to have authority to receive the money, the full amount of the judgment —other executions on the same judgment afterwards came to the hands of the defendant, as sheriff, but he did not pay over the money in satisfaction thereof: *Held,* That there was not such a trust as protects the complainant's remedy against the defendant from the operation of the statute of limstations—the rule being, that the trusts intended by a court of equity as not to be reached or affected by the statute of limitations, are those technical and continuing trusts which are *not at all* cognizable at law; but that as to those trusts where there is a legal and an equitable remedy, in respect to the same subject matter, the latter is under the control of the same statute bar as the former. (*Harris vs. King,* 16 *Ark.* 124.)

Where complainant's remedy is barred by limitation, on the face of the bill, and he fails to allege any matter in avoidance, and the answer contains a demurrer to the bill, the objection will be fatal on the hearing. (*Sullivan vs. Hadley,* 16 *Ark.* 129.)

*Appeal from the Chancery Court of Pulaski County.*

Hon. Hulbert F. Fairchild, Chancellor.

Williams, for the appellant.

The claim of the complainant was barred by the statute of limitations, as shown upon the face of the bill. A demand barred at law is barred in equity. See *Story's Eq. Pl.* 378, 389, 581; *Humbert vs. Trinity Church,* 24 *Wend. R.* 587; 2 *A. K. Marsh.* 45; 3 *Ib.* 223; *Thompson vs. Blair,* 3 *Murphy* 583; *Barden vs. Shelden,* 10 *Yerger* 41; 1 *Dev. & Bat.* 73; *Taylor vs. Bates,* 4 *Dana* 139; 2 *American Ch. Dig., by Wharton, p.* 641. A party's ignorance of his right until after the statute has attached, will not avoid its effects. 24 *Wend.* 605;

*Thomas vs. Floyd,* 3 *Litt.* 177; 3 *Humphrey,* 115; 5 *Barn. &
Cres.* 149; 7 *Dowl. & Ryl.* 729.

The common saying, that the statute will not run in cases of
fraudulent trust, applies only to cases where equity has exclu-
sive jurisdiction, when it will not permit the statute to run at
discretion; but if cognizable at law, and within the cases pro-
vided for in the statute, is as positive a bar in one Court as the
other. *Hamilton vs. Shepard's admr.* 3 *Murphy* 115; 5 *Dana*
189; 7 *J. C. R.* 89.

WATKINS & GALLAGHER, for the appellee.

The decree from which Lawson appealed is in accordance
with substantial justice. He acted in bad faith in using his
office of sheriff to obtain money from Badgett, and in conceal-
ing the fact from him that it had never been applied to the
satisfaction of the judgment. He abused the confidence of
Badgett, and he retained the money in the character of trustee.

Lawson made no attempt to set up the statute of limitations,
and is not entitled to the benefit of it on the hearing.

Mr. Justice COMPTON delivered the opinion of the Court.

On the 18th day of October, 1849, Noah H. Badgett exhibited
his bill, on the Chancery side of the Pulaski Circuit Court,
against *Robert Patterson,* to enjoin an execution upon a judg-
ment at law, by *Patterson,* against the late firm of McLain &
Badgett, (Badgett being at the time of the issuance of the exe-
tion, the survivor,) alleging that the judgment upon which the
execution issued, had been fully satisfied by payment to James
Lawson, who was, at the time of such payment, Sheriff of
Pulaski county, and had in his hands an operative execution
upon the judgment. *Patterson* answered the bill, on informa-
tion, denying the payment; and being a non-resident, and hav-
ing no personal knowledge of the transaction, he made his
answer a cross bill against Lawson, praying relief against him,
in the event it should turn out in evidence, that the judgment
had been satisfied, as alleged in the bill. *Lawson answered*

*Patterson's* cross bill; and upon the coming in of his answer, Badgett believing that he would be able to establish the payment of the money to *Lawson*, while he held the office of sheriff, but fearing he could not establish that he had in his hands an operative execution upon the judgment, at the time of such payment, filed his amended and supplemental bill, to which he made Lawson a party, asking, in the alternative, a perpetual injunction against *Patterson*, or a decree against *Lawson* for the money, as the proof might warrant.

Lawson demurred to the amended and supplemental bill. His demurrer being overruled, he answered, reserving in his answer the benefit thereof to the final hearing. The cause was heard upon the pleadings and proof. The Court dissolved the injunction; and dismissed the bill as to *Patterson*, and entered a decree against *Lawson*, in favor of Badgett, for the amount of *Patterson's* judgment, with interest and costs. *Lawson* appealed.

Inasmuch as we are of opinion that the decree ought to be reversed, upon the ground that Badgett's remedy against *Lawson* was barred by the statute of limitations, it is unnecessary to discuss or determine the other questions raised on the record, and as *Lawson* did not set up the statutory bar by plea, but had the benefit of that defence on demurrer only, our enquiry into the facts is narrowed, and we need look only to the face of the bill to ascertain whether the facts there stated show that Badgett's demand was barred by the statute.

The bill was filed on the 18th day of October, 1849, and alleges that, on the 9th day of November, 1840, Patterson recovered his judgment at law, upon which execution issued, and came to the hands of *Lawson*, as sheriff, on the 6th day of April, 1841, returnable to the September term of the Court next following; that on the 23d day of October, 1841, *Badgett* paid to *Lawson*, as sheriff, the full amount of the judgment, and took his receipt; that at the time of such payment, *Lawson* assumed to have authority to receive the money in satisfaction of the judgment; that *Badgett* had full confidence in *Lawson*,

and never doubted his authority to receive payment, or that it would be a valid discharge of the judgment, and never knew or supposed but that the same had been satisfied, or heard any thing to the contrary, until after the issuance of the execution sought to be enjoined, which bore date the 9th day of August, 1849; that at the time of such payment to *Lawson* he was sheriff, and, although he then had no execution in his hands, yet other executions on the same judgment came to his hands while sheriff, and to which he ought to have applied the money.

These are the only allegations in the bill as against *Lawson*, and we have put them in their strongest light.

Do they show such a trust as protects *Badgett's* remedy from the operation of the statute of limitations? Clearly not. All that can be said, in view of the facts charged, is, that *Lawson* abused the confidence of *Badgett*, was guilty of a breach of trust, as contradistinguished from a breach of those *peculiar* trusts which are *exclusively* cognizable in a Court of equity.

In the business transactions, as well as the social relations of life, men must and do repose confidence in each other; and to hold that every breach of confidence, or violation of trust, should be the subject matter of judicial investigation in a Court of equity, after a long lapse of years, would not only be to virtually set aside the statute of limitations, but in many instances, would necessarily result in the grossest injustice.

*Badgett's* demand was not one of exclusive equitable cognizance; he could have maintained his action at law for money had and received, and if a Court of equity had jurisdiction of it, still his demand was none the less a legal one, and he would not be permitted to elude the force of the statute by changing the *forum*.

The true rule as laid down by Chancellor KENT, in *Kane vs. Bloodgood*, 7 *Johns. Ch. R.* 112, and followed by this Court in *Harris vs. King*, 16 *Ark.* 124, and other decisions, is that the trusts intended by a Court of equity, as not to be reached or affected by the statute of limitations, are those technical and continuing trusts which are *not at all* cognizable at law; but

that, as to those trusts where there is a *legal* and an *equitable* remedy, in respect to the same subject matter, the latter is under the control of the same statute bar with the former.

In that case, the Chancellor said: "I cannot assent to the proposition that all cases of direct and express trust, and arising between trustee and *cestui que trust,* are to be withdrawn from the operation of the statute of limitation, notwithstanding a clear and certain remedy exists at law. The word trust, is often used in a very broad and comprehensive sense. Every deposit is a direct trust. Every person who receives money to be paid to another, or to be applied to a particular purpose, to which he does not apply it, is a trustee, and may be sued, either at law, for money had and received, or in equity as a trustee, for a breach of trust. (citing *Scott vs. Surman, Willes Rep.* 404, 405.) The reciprocal rights and duties, founded upon the various species of Bailment, and growing out of those relations, as between hirer and letter to hire, borrower and lender, depositary and person depositing, a commissioner and an employer, a receiver and a giver in pledge, are all cases of express and direct trusts; and these contracts, as Sir WILLIAM JONES observes, ( *Jones on Bailments, p.* 2,) 'are among the principal wheels and springs of civil society.' Are all such cases to be taken out of the statute of limitations under the notion of a trust, when one of the parties selects his remedy in this Court? A review of the decisions will enable us, as I apprehend, to deduce from them a safer and sounder doctrine; and to establish upon the solid foundations of authority and policy this rule," etc. And the learned Chancellor then proceeds to lay down the rule, which we have above given.

It is contended, however, that although *Badgett* had a cause of action against *Lawson* for money had and received, yet *Lawson* fraudulently concealed such cause of action from him until within three years next before the filing the bill. The bill does not so charge. It merely charges that Badgett was ignorant of his rights, as many frequently are, and so continued; and it will be seen from the facts alleged, that his ignorance

was attributable, in the main, to his own negligence. No fraudulent misrepresentations are charged upon *Lawson*. The substance of the charges may be stated in a few words: Lawson was sheriff, the judgment was in existence, *Badgett* paid the money to *Lawson*, who assumed to have authority to receive it, and afterwards failed to apply it in satisfaction of the judgment. Upon what ground Lawson assumed to have authority to receive the money, or what was said by him in that connection, we are not informed. Lawson did not tell Badgett that he had an execution in his hands, nor did Badgett interrogate him as to the fact. The judgment, and the executions which issued on it, and the returns endorsed thereon, were public records, to which Badgett had access. He never made enquiry of Lawson, or otherwise, to ascertain whether the money had been applied as he designed it.

It was due to a blind confidence in Lawson, and neglect on his own part, to avail himself of the ordinary means of information, that he remained in ignorance of his rights.

There being, then, no charge of fraudulent concealment, it is unnecessary to determine the question, whether the statute would begin to run until after the discovery of the fraud.

But it is urged that Lawson did not plead the statute of limitations.

In *Sullivan vs. Hadley*, 16 *Ark.* 129, and other decisions of this Court, it was held that where complainant's remedy is barred by limitation, on the face of the bill, and he fails to allege any matter in avoidance, and the answer contains a demurrer to the bill, the objection will be fatal on the hearing.

The decree must be reversed, and the bill dismissed with costs, etc.

Mr. Chief Justice English did not sit in this case.