362 CASES IN THE SUPREME COURT.

Curtis et al. vs. Daniel et al. [MAY

----

## CURTIS ET AL. VS. DANIEL ET AL.

Adverse possession of slaves, under a verbal gift void by statute, for the period of limitation, confers title upon the possessor, and bars a recovery by an adverse claimant. (*Spencer vs. McDonald*, 22 *Ark.*)

The possession contemplated by the statute (*Gould's Dig., p.* 1026,) must be a peaceable possession, adverse or hostile to the true owner; and does not as a

general rule run in favor of a direct trustee, (19 *Ark.* 665; 18 *Ib.* 498; 22 *Ib.* 9.) but where the trustees sells, or otherwise disposes of the trust property to another person, who holds and uses the property as his own for the period of limitation, his possession is adverse within the meaning of the statute, and he is entitled to its protection. (*Halliburton ad. vs. Fletcher et al.,* 22 *Ark.*)

*Appeal from Drew Circuit Court in Chancery.*

Hon. JOHN C. MURRAY, Circuit Judge.

HARRISON for the appellant.

An express trust will not be barred by any length of time. *Hill on Trustees,* 264; *Sheldon vs. Wildman,* 2 *Ch. Ca.* 26; *Cook vs. Williams,* 1 *Green. Ch.* 209; *Armstrong vs. Campbell,* 3 *Yerg.* 201; 4 *Ib.* 104; 1 *J. J. Marsh.* 401; 5 *John. Ch.* 244; 7 *Ib.* 90; *Story's Eq.* 980.

If James Curtis gave the slaves to defendants it was a fraud on complainants' rights, and no delay will purge a fraud. *Alden vs. Gregory,* 2 *Eden,* 280; *Deloraine vs. Browne,* 3 *Bro. C. C.* 633; *Pugh's heirs vs. Bell's heirs* 1 *J. J. Marsh.* 408; *Kane vs. Bloodgood* 7 *John. Ch.*

As to what constitutes an adverse possession, see *McClung vs. Ross,* 5 *Wheaton,* 116, 124; *Morris vs. Vandever,* 1 *Dall.* 67; *Baxton vs. Henson,* 3 *Iredell,* 659; *Logan vs. Simmons,* 1 *Dev. & Bat.* 13.

That a *cestui que trust* will not be barred from his right to relief by any length of acquiescence unless he have an immediate possessory title to the beneficial interest—*Hill on Trustees,* 266; *Bennet vs. Colley,* 5 *Sim.* 181.

WINTER, for the appellees.

The only legitimate bearing, the transcript of the statute laws of the State of North Carolina, read at the hearing by the appellants, could have in the case, would be to aid the statutory bar set up, in defence of their claim, by impliedly fixing the time and place of the appellees acquiring possession of said slaves to have been by a gift in the State of North

**364** CASES IN THE SUPREME COURT

Curtis et al. vs. Daniel et al. [MAY]

Carolina, prior to the year 1850. It is alleged in the bill that the appellees obtained possession of them at that time and place, by a gift, from said James, but·there is no fraud or other insufficiency alleged in avoidance of that gift. Without some such showing, a court of equity, regarding the substance and not the form or circumstances of said gift, when called on to adjudicate upon the right acquired thereunder, would always consider that gift in all things perfect, and to have been made according to the provisions of those statutes, unless there was positive proof to the contrary. "Equity looks·upon that as done, which ought to be done." *Story's Eq.* 649; *Craig vs. Leslie,* 3 *Wheat.* 578.

The possession by the appellees of said slaves was not a trust, two things are essential: first, that the ownership conferred be coupled with a trust, either declared by the parties or resulting by presumption of law: secondly, that it be accepted on those terms by the trustee. *Adams' Eq.* \*27; *Hill on Trusts,* 144, *and note* 1.

But if the appellees could, in any way, be construed to hold said slaves in trust, it would be merely an implied one, which would still leave the appellants' claims to them vulnerable to the defence interposed. To exempt a trust from the bar of the statutes of limitation, it must be a direct trust. *Angell on Lim., sec.* 166.

The statements in the answer definitely limiting the date, place and circumstances of the gift of said slaves to the appellees, were wholly responsive to the bill, and were bound to be taken as true as therein set forth, unless they had been disproved by two witnesses, or one witness and strong corroborating circumstances to the contrary. 1 *Gill & J.* 270; 2 *Blacf.* 324; 3 *Wend.* 532; 4 *Eng.* 550; 19 *Ark.* 51; 20 *Ark.* 381.

It is shown by the allegations in the bill, by the responsive statements in the answer, and by implication from the evidence introduced at the hearing; that the appellees had "peaceable possession" of said slaves, Sam and Mid, from the time they removed from the State of North Carolina to Arkansas, until

OF THE STATE OF ARKANSAS. **365**

Term, 1861.]                    Curtis et al. vs. Daniel et al.

some time in the year 1857, a period of over five years, when appellants first set up their pretended claim to an interest in them, which lapse of time alone, under our statutes was sufficient to give the appellees " the right of property thereto, as against all persons whatever, and which may be relied on as a complete bar to any suit in law or equity." *Secs.* 3 *and* 4, *chap.* 162, *Gould's Digest.* Their adverse possession of five years, even had it been with a full knowledge of a better title in some one else, would be a bar to that title. *Alexander vs. Pendleton*, 8 *Cranch.*, 462. The only exceptions to the limitation of the statute of five years peaceable possession of slaves, are contained in the 5th section of the act of December 19th, 1846, and the courts will make no others. 1 *Eng.* 14; 13 *Ark.* 291; *Pryor et al. vs. Ryburn*, 16 *Ark.*; *Sadler vs Sadler, Ib.* 628; *Machin vs. Thompson*, 17 *Ark.* 199; *Angell on Lim.* 204, 205. If the statute had been less comprehensive, it would not have been equal to the grave considerations of policy which induced its enactment. 16 *Ark.* 694; *McElmoyle vs. Cohen*, 13 *Peters*, 312. The decision in the case of *Parr vs. Vaughan, ad.*, 20 *Ark.* 600, does not alter the rule. The term of five years had not expired after the enactment of the statute before the institution of that suit. An implied trust would not prevent the operation of the statute. *Adams, ad., vs. Taylor*, 14 *Ark.* 62; *Murdock vs. Hughes*, 7 *Smede and Mar.* 219. In the case of *Crabtree et al. vs. McDaniel*, 17 *Ark.* 222, there is an averment in the bill that the defendant held the slaves " without authority of law, and as trustee for the complainants." Yet the court failed to regard the averment as of any importance, and maintained the ruling laid down in the case of *Pryor and wife vs. Ryburn*. Thus is the law well settled in this State, that five years peaceable possession of slaves bars all actions for their recovery, and gives to the holder a valid and absolute title to them.

Mr. Chief Justice ENGLISH delivered the opinion of the court. On the 2d of April, 1824, Nancy Curtis, of Anson county,

**366**    CASES IN THE SUPREME COURT

Curtis et al vs. Daniel et al.    [MAY

North Carolina, made her will, which contained, among others, the following clauses:

" I give and bequeath to the heirs of my son, Thomas Curtis, (provided that such should hereafter make their appearance, giving satisfactory evidence that they are the legal and bodily heirs of said Thomas Curtis,) a negro woman named *Lucy*, and all her increase, except a girl named Massey, which I bequeath to my grandson Thomas, son of Elijah Curtis.

" I also bequeath to the heirs of Thomas Curtis (provided they come qualified as above named) a negro boy by the name of Sam.

" The above named negroes, which I bequeath to the heirs of my son Thomas, I desire to be given up, at my death, to my son James Curtis, for the purpose of securing them to the heirs of Thomas Curtis; and I do hereby empower my son James to take possession of said negroes, at my death, for that purpose. And *provided* that the legal bodily heirs of Thomas Curtis should not hereafter come forward and demand the above named negroes, which I have bequeathed to them, the said negroes and their increase shall be equally divided between the heirs of James and Elizabeth Curtis, viz: Emeline and Nancy Jane, daughters of James, and Harvey and Thomas, sons of Elizabeth Curtis."

It appears that, at the time the will was made, Thomas Curtis, the son of the testatrix, was absent from the United States; that he had not been heard of for a considerable time, and the testatrix supposed him to be dead; and that it was not known whether he had any children or not. But it turned out that he was not dead. He was living when the bill was filed, (17th February, 1858,) but quite an old man, and childless, never having been married.

The woman *Lucy* had one other child, besides *Massey*, named *Mid*.

The testatrix died shortly after the execution of the will, and immediately after her death, and the probate of the will, James Curtis took possession of Lucy, her child Mid, and the negro

OF THE STATE OF ARKANSAS. 367.

Term, 1861.]                Curtis et al vs. Daniel et al.

boy *Sam*, and retained possession of them until within about fifteen years before the filing of the bill, when he gave the boy *Sam* to his daughter Emeline, and *Mid* to his daughter Nancy Jane; *Lucy* having about that time died.

Emeline intermarried with Dudley Daniel, and Nancy Jane intermarried with Wm. E. Spence.

The bill was filed by James Harvey Curtis and Thomas Curtis, sons of Elijah Curtis, and grandsons of testatrix, against Daniel and wife, and Spence and wife, for an account of hire, and partition of the slaves. The court below, on the final hearing, dismissed the bill, and the only question discussed by the counsel here, or which need be decided, is, whether the relief sought by the bill was barred by the statute of limitation.

The cause was heard in the court below on the bill, answer, replication, a transcript of the will of Nancy Curtis, and a copy of an act of the General Assembly of North Carolina concerning gifts of slaves. The time at which the defendants obtained possession of the slaves in controversy, the character and duration of their possession, and the nature of the title under which they held them, are to be determined from the allegations of the bill, the admissions and averments of the answer.

From them it appears that James Curtis took possession of Lucy, Mid and Sam shortly after the death of Nancy Curtis, as above stated, and remained in possession of them until about the year 1843, taking and using their labor for his own benefit. That about that time he partitioned his property between his two daughters, Emeline and Nancy Jane, who were his only children, and at the same time divided between them the slaves in controversy, giving *Sam* to Emeline and *Mid* to Nancy Jane. From that time until the filing of the bill, the defendants had possession of *Sam* and *Mid*, taking the benefit of their services, and treating them as their property.

About the year 1850, James Curtis and the defendants moved to this State, and the former lived with the latter until the time

of his death, which occurred some two or three years before the filing of the bill.

The bill alleges that the defendants at all times, until shortly before the commencement of the suit, recognized the right of the complainants in the slaves, and at one time, in the year 1857, made a verbal agreement with them to sell the slaves, and divide the proceeds. On the contrary, the answer denies that defendants ever recognized any right in complainants to the slaves, and avers that defendants had no knowledge that complainants had any claim to the slaves until about the year 1857—that from the time the slaves were given to defendants, by James Curtis, to the time of the filing of the bill, they were in the peaceable, uninterrupted possession of the slaves, claiming and using them as their own property.

In the absence of any proof to sustain the allegations of the bill, it must be assumed from the admissions, denials, and responsive allegations of the answer, that the defendants were in the peaceable, continuous, uninterrupted and adverse possession of the slaves, for more than five years after the passage of the act of 19th of December, 1846, and before the filing of this bill,

Whether the gift of the slaves from James Curtis to his daughters was in parol or by deed, does not appear from the allegations of the bill or the answer. But assuming it to have been a verbal gift, and that under the statute of North Carolina, read in evidence, such gift was null and void, yet it has been held that adverse possession of slaves, under a verbal gift void by statute, for the period of limitation, confers title upon the possessor, and bars a recovery by an adverse claimant. *McDonald ads. vs. Spencer*, 22 *Ark.*, and cases cited.

It is insisted for the appellants that James Curtis held the slaves as a direct trustee, under the will of Nancy Curtis, for the joint benefit of themselves and the appellees; that the statute of limitations did not run in his favor; and that appellees having received the slaves of him, with knowledge of the

trust, held them as trustees, in his stead, and that the statute did not run in their favor.

The statute (*Gould's Digest*, *p.* 1,026) declares that the peaceable possession of slaves, etc., for five years, etc., shall be sufficient to give the the possessor the right of property, as against all persons, etc.

The statute makes no exception in favor of persons claiming slaves as *cestui que trusts* against their direct trustees, but we have held that the possession contemplated by the statute was such possession as was adverse or hostile to the title of the owner (*Spencer vs. McDonald*, 22 *Ark.*, and cases cited), and that it did not, as a general rule, run in favor of a direct trustee, because his possession was not adverse within the meaning of the statute, but in contemplation of law, the possession of his *cestui que trust*. *Anderson vs. Dunn*, 19 *Ark.* 665; *Harriet et al. vs. Swan et al.*, 18 *ib.* 498; *Brinkley & wife vs. Willis et al.*, 22 *ib.* 9.

But where the trustee sells or otherwise disposes of the trust property to another person, in violation of the trust, though the purchaser, if he takes the property with knowledge of the trust, may be chargeable in equity as an implied trustee, yet his possession commences in hostility to the title of the *cestui que trust*, and if he holds and uses the property as his own for the period of limitation, his possession is adverse within the meaning of the statute, and he is entitled to its protection. The *cestui que trust* must suffer the consequences of permitting a stranger to the trust to acquire and hold adverse possession of the property for the time prescribed by the statute, without resorting to the courts for its recovery.

. It was upon the principles above asserted that the court held in *Halliburton ad. vs. Fletcher ad. et al.*, that the statute did not run in favor of Henry M. Clay, who held the slaves in controversy, in that case, for many years as guardian of Dr. Green Clay, but that it did run in favor of Joseph Clay, who took the slaves from his father, Henry M., with knowledge of the trust

but held and treated them as his own property for the period of limitation after the death of his father.

It may be remarked, however, that in this case, the appellees claim the property under a gift from James Curtis, and they expressly deny that they had any knowledge of the title of the appellants until a short time before the bill was filed. In other words, they deny that they took the slaves with a knowledge of the trust, and there was no proof to overturn the answer.

The decree must be affirmed.