## STATE v. BURK.

Opinion delivered October 17, 1896.

LIMITATION—ACTION BY STATE—SCHOOL FUNDS.—The statute of limitations cannot be set up as a bar to an action by the state to foreclose a mortgage given to secure a loan of money belonging to the sixteenth section school fund and held by the state in trust for the use of schools.

Appeal from Grant Circuit Court in Chancery.

ALEXANDER M. DUFFIE, Judge.

E. B. Kinsworthy, Attorney General for appellant.

1. By act of Congress, the title to the school lands is vested absolutely in the state. 19 Ark. 308. The state has reserved the title and control of same ever since. Acts 1881, pp. 154 to 159; 50 Ark. 346; 49 id. 172; 37 id. 133. The school district could not sue for the fund, it must be done by the state. Sand. & H. Dig. sec. 7125, and cases supra.

2. The maxim "nullum tempus," etc., applies. No laches can be imputed to the state, and against it no time runs to bar its rights. Johns. (N. Y.), 228; 70 Ala. 507; 13 Wall. (U. S.), 92; 9 Wheat. (U. S.), 720, 736; Angell, Lim. secs. 38, 39; 2 Hill (N. Y.), 59; Angell, Lim. sec. 40; 34 Kas. 237.

BATTLE, J. The complaint in this action is, in part, as follows: "The plaintiff, the State of Arkansas, for the use and benefit of the common school fund of Arkansas, and of section 16, in township 4 south, in range 15 west, and Frank W. Rushing, treasurer of Grant county, Arkansas, bring this suit in equity against J. H. Burk and S. D. Reese, who are prayed to be made parties defendants hereto. The plaintiffs state that, under the provisions of section 7 of an act of the

general assembly of the State of Arkansas, entitled 'An act to provide for the sale of the sixteenth sections of the state,' approved March 22, 1881, the then treasurer of Grant county aforesaid, to wit, Daniel Johnson, loaned to defendant, J. H. Burk, the sum of $37.15, belonging to said sixteenth section; and, to secure the payment of the same, a mortgage was executed by said J. H. Burk, and two promissory notes, dated March 20, 1883, for $24.68 and $12.42, respectively, and drawing 10 per cent. interest per annum, and due and payable five years after date, by said J. H. Burk, and defendant S. D. Reese as security, as follows :" Then follow copies of the notes and mortgage, and a prayer for judgments against the defendants on the notes, and a decree to foreclose the mortgage. To this the defendant pleaded the statute of limitations, and the plaintiff demurred to the answer, and the court overruled the same. The state refused to proceeed further, and the court dismissed the action, and the state appealed.

The only question in this case is, was the action barred by the statute of limitations?

No laches is imputable to the state. Its interests are not prejudiced by the negligence of its officers or agents to whose care they are confided. Hence the statute of limitations cannot be set up as a bar to any right or claim vested in the state as a sovereign, unless it expressly provides that it may be done. But this rule has no application to actions brought by the state, to which it is a nominal party, and in which its name is used to enforce a right which inures solely to the benefit of an individual, or a corporation, municipal or otherwise. If, however, the action is brought to enforce a trust assumed by the state for the purpose of discharging a governmental duty, the rule applies. Thus, in *United States* v. *Nashville, etc., Ry. Co.*, 118 U. S. 120, "the United States bought the coupons sued on, and the

bonds to which they were annexed, long before any of them became payable, or the statute of limitations had begun to run against the right of any holder to sue thereon. The money with which they were bought was money received by the United States from the sale of lands ceded to them by the Chickasaw Nation of Indians." The court said : "These lands, the money received from their sale, and the securities in which that money was invested, were held by the United States, in trust, to be applied for the benefit of those Indians, in performance of the obligations assumed by the United States by treaties with them. The securities were thus held by the United States for a public use in the highest sense, the performance of a *quasi* international obligation; and they continued to be so held until that obligation had been performed and discharged, after which they were held by the United States, like all other property of the government, for the ordinary public uses. *Van Brocklin* v. *Tennessee,* 117 U. S. 151, 158. The necessary conclusion is that the statute of limitations of Tennessee never ran against the right of action of the United States upon these coupons, either while the United States held them in trust for the Indians, or since they have held them for other public uses."

The principle on which the case cited was decided seems to be applicable to the one under consideration. The convention of delegates at Little Rock, assembled for the purpose of making a constitution for the State of Arkansas, prior to its admission into the Union, by an ordinance, submitted certain propositions to the Congress of the United States, which were rejected; and Congress, in lieu thereof, submitted five others, among which was the following: "That the section numbered sixteen in every township, and when such section has

been sold or otherwise disposed of, other lands equivalent thereto, and as contiguous as may be, shall be granted to the state, for the use of the inhabitants of such township for the use of schools." Annexed to these propositions was the following proviso: "Provided, that the five foregoing propositions, hereinbefore offered, are on the condition that the general assembly or the legislature of the said state, by virtue of the powers conferred upon it by the convention which framed the constitution of the said state, shall provide, by an ordinance irrevocable without the consent of the United States, that the said general assembly of the said state shall never interfere with the primary disposal of the soil within the same by the United States, nor with any regulations Congress may find necessary for securing the title in such soil to the *bona fide* purchasers thereof; and that no tax shall be levied on lands the property of the United States; and that in no case shall non-resident proprietors be taxed higher than residents; and that the bounty lands granted, or hereafter to be granted, for military services during the late war, shall, while they continue to be held by the patentees or their heirs, remain exempt from any tax levied by order or under the authority of the state, whether for state, county, township or any other purpose, for the term of three years from and after the date of the patents respectively." The state accepted these propositions in the manner prescribed by the proviso, and thereby entered into a solemn compact with the United States, by which it undertook to perform the trust created by the act of Congress.

In *Mayers* v. *Byrne*, 19 Ark. 308, the court held that the effect of the act of Congress, and the acceptance of the propositions therein contained, was to vest the title to the sixteenth sections therein granted, absolutely, in the state; and in this connection said:

"The state accepted the grant, however, charged with the trust that the land was to be appropriated to the use of the inhabitants of the township in which it was situated, for the use of schools. The state, as a sovereign, not as an individual, took upon herself a trust, which she was to execute, and could only execute, by such municipal legislation as her general assembly might deem necessary and expedient to carry into practical effect the objects of the grant."

The duty to maintain schools has ever been recognized by this state. In the constitution of 1836, which is referred to in the act of Congress before mentioned, it is ordained : "Knowledge and learning generally diffused throughout a community being essential to the preservation of a free government, and diffusing the opportunities and advantages of education through the various parts of the state being highly conducive to this end, it shall be the duty of the general assembly to provide by law for the improvement of such lands as are, or hereafter may be, granted by the United States to this state for the use of schools, and to apply any funds which may be raised from such lands, or from any other source, to the accomplishment of the object for which they are or may be intended," etc. Substantially the same language is used in the constitution of 1861, and is literally adopted in the constitution of 1864; and the constitutions of 1868 and 1874 make it the duty of the general assembly to maintain a system of free schools.

In 1842 the general assembly enacted laws providing for a system of public schools for the various counties in the state. Under certain conditions, three trustees could be elected by the qualified voters of each congressional township, and, when elected and qualified, were to constitute a body corporate, and become a part of a school system, and an instrument of the state in the performance of a governmental work, and, as such,

were subject to changes or abolition by the general assembly. This system was from time to time changed and improved, and the management and control of such corporations as were formed passed into the hands of superintending officials. The control and sale of the sixteenth sections and the proceeds of the sale thereof continually underwent changes, the state always exercising the right to control and manage them for the purposes of education. Whatever changes were made in the corporations, they were always a part of a system organized for the purpose of performing governmental functions. In 1868 the old system of schools was abrogated, and a new one was established, which abolished the organization of townships into school districts, and required the state to be divided into districts, which were to become corporations subject to be changed at any time. While the state has always recognized the inhabitants of each township as the beneficiaries of the grant of the sixteenth sections in their township, it has never abandoned the trust it assumed, but has always made and treated the individuals or corporations placed in control of the same as component parts of a general system of education, and at the same time as instruments in its hands for the performance of that trust. Pursuing this line of conduct, the general assembly, in 1885, enacted a law requiring the sales of the sixteenth sections of land to be for cash, and the proceeds of the sale to be paid into the state treasury, and the attorney general to employ counsel to collect all moneys owing for such land, and such money, when collected, to be also paid into the state treasury; and the state thereby undertook the collection of the same in its own name.

Had the sixteenth sections and the fund arising from the sale of the same absolutely belonged to the state, unaffected by any trust, no action for their recovery would have been barred by the statute of limitations.

Under the circumstances, we do not see how the trust subjected the state's right of action to the statute, since the state, while administering the trust, has held and made, and now holds, the land and fund subservient to governmental purposes, and as it could had they been its property, free from any trust, especially when the action is brought for the recovery of a part of the fund or land for the purpose of executing the trust in the manner indicated. Our conclusion from what we have said is that this action was not barred.

Congress offered, substantially, the same propositions to Iowa, when it was admitted as a state into the Union, as were offered to Arkansas. One of them was, "that section numbered sixteen in every township, and, when such section has been sold, or otherwise disposed of, other lands equivalent thereto, shall be granted to the state, for the use of the inhabitants of such township, for the use of schools." This was offered for its free acceptance or rejection, which, if accepted, was to be obligatory upon the United States and the said state. The act of Congress then made three other propositions. The four propositions were subject, substantially, to the same conditions as those submitted to Arkansas. The differences do not affect the question we are considering. Iowa accepted the propositions. In the *County of Des Moines* v. *Harker*, 34 Iowa, 84, one of the questions was, whether that action, which was brought for the recovery of "school fund" money, was an action by the state, in such a sense as the statute of limitations did not apply to it? The court came to the same conclusion we have, saying: "The state being the legal owner of the school fund, and, by the constitution, pledged to keep it good against all losses, it is but just that in controversies concerning it the state should have the benefit of the rules of law attaching to its sovereignty."

*Miller* v. *State*, 38 Ala. 600, was an action brought in the name of the state "for the use of township seventeen, range eleven east, in the Coosa land district," against Samuel Miller and others, to recover the possession of a part of section sixteen in said township and range. The statute of limitations was interposed. The court said: "By the act of Congress of 2d March, 1819, for the admission of Alabama into the Union, the sixteenth section in every township was granted 'to the inhabitants of such township, for the use of schools.' This court has held that the legal title to these lands could not vest in the inhabitants of the township, as they had no corporate existence; nor could such a capacity be conferred on them by the act of Congress. And the construction placed upon this act has been that the grant is in perpetuity to the inhabitants of the respective townships; and that the legal title to the land is in the state, in trust for the inhabitants of the respective townships in which the land is situated. * * This trust the state has executed. As early as 1819, agents were appointed to take care of the lands; and, subsequently, school commissioners were appointed, and trustees required to be elected by the townships, for the management of the lands and the schools in each township; and the officers thus provided for were respectively declared bodies corporate. By the Code, the inhabitants of the respective townships are incorporated, and the election of school trustees provided for, who are entrusted with the management of the sixteenth section, and are expressly authorized to direct suits, at law or in equity, in all cases affecting the interest of such township. Code, sec. 546. It is not to be doubted that, by virtue of the general authority conferred upon them by law, as it stood before the Code, the commissioners were clothed with the power to direct suits to recover the possession of the sixteenth section, when it was improperly held by a

third person. * * * * Though the state is a party to this suit, it has no real interest in the litigation. If there be a right of recovery, the property sued for belongs, not to the state, but to the township; so that, in point of fact, the suit is substantially between the township and the defendant. * * * * In our opinion, the rule that the statute of limitations does not run against the state has no application to a case like the present, where the state, though a nominal party on the record, has no real interest in the litigation, but its name is used as a means of enforcing the rights of a third person, who alone will enjoy the benefits of a recovery."

According to the view we take of the law in the case before us, there never has been an execution of the trust, as in *Miller* v. *State, supra.* The corporations into which the trustees of the townships were formed, if ever, were made agents or instruments of the state for the administration of the trust assumed. No independent rights vested absolutely in them in the execution of the trust. *Dartmouth College* v. *Woodward,* 4 Wheat. 629. And another difference is, the state in this case brings the action in her own name by authority of an act of the general assembly.

The judgment of the circuit court is, therefore, reversed; and the cause is remanded with directions to the court to sustain the demurrer to the answer, and for further proceedings.