SPRIGG *v.* WILMANS.

4-6846                                          165 S. W. 2d 69

Opinion delivered October 26, 1942.

*Pickens & Pickens,* for appellant.

*Hout & Mack* and *Judkins & Smith,* for appellee.

SMITH, J. I. S. Wilmans died testate in Jackson county, Arkansas, and his will was admitted to probate the 8th day of July, 1929. He left no children, but was survived by his wife, who was not the only—but was the principal—beneficiary. The will is long, and contains many provisions which are unimportant in the consideration and decision of the only question presented on this appeal, and only such portions of the will are copied as bear upon this question presently to be stated.

Wilmans was reputed to be a man of wealth, and no doubt considered his estate sufficient to provide the benefactions which the will enumerated. He devised his home to his wife, $500 to a cousin, and smaller amounts to certain persons designated as good friends. These bequests were promptly paid by the trustees to whom the whole estate was devised. These trustees were three in number, one of them being a brother of the deceased. The will contained provisions for the perpetuation of the trust until its purposes had been discharged.

All the estate, real and personal, was devised to these trustees, with full power to sell and convey any part of it, or to reinvest the proceeds of sales, all for the purpose of executing the trust created.

Paragraph (D) of the will created three annuities, and reads as follows: "(D) The net income from all property, both real and personal, devised to said trustees and which shall come under their control and management shall be paid out and disbursed by them in the following order and amounts, to-wit:

"(1)   They shall pay to my wife, Ella D. Wilmans, the sum of $4,000 annually, so long as she may live, payable in four installments of $1,000 each on January 1st, April 1st, July 1st and October 1st of each year, the first quarterly installment being due at the first of any month above named next following my death.

"(2)   They shall pay to my cousin, Webster Robertson, the sum of $600 annually, so long as said trust may continue, payable in four installments of $150 each on January 1st, April 1st, July 1st and October 1st of each year, the first quarterly installment being due at the first of any month above named next following my death.

"(3)   They shall pay to Hattie B. Wilmans the sum of four hundred dollars annually, so long as said trust may continue, payable in four installments of $100 each on January 1st, April 1st, July 1st and October 1st of each year, the first quarterly installment being due at the first of any month above named next following my death.

"If it be necessary in order to have or provide funds to make the payments directed to be made in subdivisions (1), (2) and (3) above of subsection (D) of section five of this will, the trustees herein named and their successors shall have and are here given the power and authority and here directed to sell and dispose of any notes, securities or other personal property belonging to said trust estate and, if necessary, to sell any lands belonging to said trust estate and to secure and provide funds to make such payments."

The annuities provided for in subdivisions (2) and (3) of subsection (D) of section five of the will, above copied, were paid to the annuitants there named during their lives, both now being dead.

We think it clear that the primary purpose of the testator was to provide for the payment of these annuities during the lives of the respective annuitants, for, after conferring the powers recited in subsection (D), above copied, he reaffirmed those powers in subsection (G), which reads as follows: "(G) Said trustees are hereby authorized and shall have the power to sell any

of the lands of the trust estate at any time if the same do not appear to be profitable or if necessary to provide funds to pay any annuities under this will, and to convey an absolute title thereto.''

Anticipating a possible surplus after paying these annuities, subsection (4) of paragraph (D) contained the following provision for the distribution of the surplus of the net income after paying the annuities, to-wit:

''(4) Any and all net income after the payments above provided for have been made there shall be paid to and divided equally on the first of January and July of each year among my beloved brothers and sisters, Edward B. Wilmans, Robert D. Wilmans, Mildred A. Dorsey, Lucy W. Jones, Susan R. Sprigg, and Elizabeth B. Harris, and shall be paid share and share alike to them and to the survivors or survivor of them as long as they may live, the survivor to receive the whole until his or her death.''

Beneficiaries under this subsection (4) of paragraph (D) were indebted to the testator, but as appellants' brief states, this indebtedness was considered as a ''Family affair,'' and no effort was made to collect it.

Further anticipating that a surplus would remain in the hands of the trustees after the death of the testator's wife, subsection (5) of paragraph (D) provided that:

''(5) After the death of my said brothers and sisters and within one year from that time, if my said wife be then dead, said trustees shall divide all the property of said trust estate equally among all my nieces and nephews, the children of E. B. Wilmans, Lucy W. Jones, R. D. Wilmans, Susan R. Sprigg and Elizabeth B. Harris, living at the date of the death of my last surviving brother or sister and to the descendants of such of my said nieces and nephews as may then be dead, *per stirpes,* but if my said wife be not then dead said trust estate shall continue until her death, at which time, or as soon thereafter as can conveniently be done, and not later than one year from such date, said trustees shall divide said trust estate among my said nieces and nephews living at the

time of the death of the last survivor of my said brothers and sisters and to the descendants of such of my said nieces and nephews as may be dead at the time of the death of the last survivor of my said brothers and sisters; and from the date of the death of the last survivor of my said brothers and sisters to the date of the death of my wife, if such be the event, that portion of the net income from said trust estate theretofore paid to my said brothers and sisters shall be paid to said nieces and nephews living at the time of the death of such last surviving brother or sister and to the descendants of such of said nephews and nieces as may then be dead, *per stirpes.* And division shall then be made of said trust estate as herein provided and this trust shall thereupon cease, provided that if my said cousin, Webster Robertson and Hattie B. Wilmans, or either of them, be then living, that provision shall be made by said trustees for the continued payment to them during their lifetime of the annuities given them in section five of this will."

This subsection (5) of paragraph (D) reiterates the primary purpose of the testator to provide for the support of his wife by the payment of the annuity to her during her life, as the division of the anticipated surplus was not to be made until after her death, and it was directed that the trust continue and be administered by the trustees until after that event.

Only one-half of the annuity payable to the testator's wife was paid in 1929, all of it was paid in 1930, nothing was paid in 1931, 1932, 1933, and 1934. $822.24 was paid in 1935, $4,185.10 was paid in 1936, nothing was paid in 1937 and 1938. In 1939 $397.99 was paid, and $839.98 was paid in 1940.

In January, 1941, the widow filed this suit to enforce the payment of arrearages. She named as defendants the trustees and the heirs of the testator who, under subsection (5) of paragraph (D), above copied, would be beneficiaries upon closing the trust. There were fifty-seven of these defendants altogether, and several entered their appearance voluntarily and filed no answer or other pleading, and only two of the heirs filed answers resisting the relief prayed.

These answers alleged that although there were three trustees in office at all times, only one of them, R. D. Wilmans, a brother of the testator, was active, and it was alleged that this trustee and the widow had colluded together to despoil the estate. No proof of this allegation was offered, and it is not urged here. It was prayed, however, that the trustees be required to account and show why the estate had dwindled in value so that it was insufficient to pay the widow's annuity.

This prayer was granted, and a master was appointed for that purpose. The master found the estate so involved that he was permitted to employ a public accountant to audit the estate, and a detailed report was made by the auditor of all receipts and disbursements by the trustees. This audit tells the tragic story, of which there are many counterparts in all this country, of the happenings during the period which is referred to as the depression years.

An order was entered September 16, 1941, "by agreement of counsel for the respective parties," that the property of the estate be sold by a commissioner appointed for that purpose, but reserving to the two defendants who had filed answers and others who wished to do so, the right to file further exceptions to the report of the master, based upon the audit above referred to.

After the assets of the estate had been appraised pursuant to the order of the court, they were sold by the commissioner. The assets consisted of a number of tracts of land, and contracts for the sale of other tracts of land which the trustees had made. These assets were first offered separately, and then collectively, and the latter sale providing a larger sum of money, that sale was reported to and confirmed by the court. The widow was the purchaser, and the sum bid by her was $13,000.

The court found that had the assets of the estate been sufficient to provide enough income to pay the annuity as it matured, the widow would have received, as of the date of the decree, the sum of $49,000, but that she has in fact been paid only $12,342.33, a difference of $36,657.67.

After providing for payment of costs and a fee to R. D. Wilmans as a trustee, no fee being allowed to the other trustees, it was ordered that the balance be paid to the widow in partial discharge of the unpaid annuity. Exceptions were saved, and from that decree is this appeal.

It is insisted that the compensation allowed the trustee is excessive; and in view of the results achieved it appears to be so; but it further appears that the widow is the only person prejudiced, that is if she is entitled to have the proceeds of the sale applied to the payment of her annuity.

In opposition to this claim the defense of the statute of limitations is interposed, it being insisted that having failed to collect the annuity as it matured, much of it is now barred by the statute of limitations. This is the only question presented for decision; and we have made this somewhat lengthy statement of the case that it may appear whether or not this statute is applicable. If the statute of limitations is not applicable, the decree must be affirmed, as the entire proceeds of the sale of the assets of the estate are insufficient to pay the widow the arrearage in the annuity, and, this being true, it will be unnecessary to decide whether the compensation allowed the trustee, Wilmans, is excessive, as the widow alone is prejudiced by its allowance, and she makes no complaint.

Very clearly the will creates an express trust, and the rule in such cases is that the statute of limitations is inapplicable to suits brought to enforce a trust.

At § 1486, page 899, of his excellent work on Arkansas Titles, Jones says: "Limitations will not run against an express trust unless there are facts which raise the presumption of extinguishment of the trust, or where an open denial or repudiation of the trust is brought home to the knowledge of the parties in interest, 46 Ark. 25; see 16 Ark. 122; 20 Ark. 195; 23 Ark. 362; 28 Ark. 19; 47 Ark. 301, 1 S. W. 546; 52 Ark. 76, 12 S. W. 155; 52 Ark. 168, 12 S. W. 328; 58 Ark. 84, 23 S. W. 4; 63 Ark. 56, 37 S. W. 406; 64 Ark. 26, 41 S. W. 427; 71 Ark. 164,

71 S. W. 669; 150 Ark. 347, 234 S. W. 259; 182 Ark. 1110, 34 S. W. 2d 1063; 6. S. W. 2d 8. But it is the general rule, subject to exceptions, that limitations will run against implied, resulting and constructive trusts, 182 Ark. 1110, 34 S. W. 2d 1063; 58 Ark. 84, 23 S. W. 4; 49 Ark. 468, 5 S. W. 797; 20 Ark. 195.''

At page 903, 37 C. J., title Limitations of Actions, a great many cases are cited in support of this statement of the law:

''(Section 267) 27. Trusts—a. General Rule. In case of a technical, or in other words, direct, express, continuing trust, such as is exclusively within the jurisdiction of a court of equity, the general rule, sometimes declared by statute, is that the statute of limitations does not run between trustee and *cestui que* trust, so long as the trust subsists, for the possession of the trustee is the possession of the *cestui que* trust and the trustee holds according to his title; and, moreover, so long as this condition exists, no cause of action has accrued. In order to set the statute in motion in favor of the trustee the trust must terminate, as by its own limitation or by settlement of the parties, or there must be a repudiation of the trust by the trustee and an assertion of an adverse claim by him, and the fact made known to the *cestui que* trust. This proposition is well established by all the numerous cases in which the question has arisen, and there is no conflict of authority whatever upon the subject. The rule, however, is subject to the qualification that the *cestui que* trust may be barred of his remedy through laches or such a lapse of time as will give rise to a presumption of discharge or extinguishment of the trust.''

Here, the trustees have, at all times, been in possession of the trust property, and the trust was not terminated until the sale of the assets of the estate ordered by the decree from which is this appeal.

The widow has been guilty of no laches. It is true she was not paid her annuity regularly and promptly, as the will provides; but this was because funds for that purpose were not available.

As appears from the provisions of the will, hereinabove copied, the trustees were empowered to sell assets, if necessary, to pay the annuity without directions to that effect from a court, and there was no error upon the part of the court in ordering this done.

The decree is correct, and is, therefore, affirmed.