## OIL FIELDS CORPORATION v. HESS.

### 4-2667

### Opinion delivered October 10, 1932.

*Albert L. Wilson,* for appellant.

*Mahony & Yocum,* for appellee.

MEHAFFY, J. The Oil Fields Corporation is a Delaware corporation authorized to do business in Arkansas, its principal place of business being in Union County.

Appellee, George L. Hess, was a director and president of the Oil Fields Corporation from May, 1925, until the latter part of August, 1928, and he was general manager of the corporation from December, 1925, until the latter part of August, 1928.

Appellee, W. E. Knappenberger, was elected a director in August, 1926, and was superintendent of production at a salary of $450 a month, which was afterwards increased to $500 a month.

On December 4, 1925, the board of directors of the Oil Fields Corporation passed a resolution authorizing and directing appellee Hess to manage the affairs of the corporation subject to the orders of the board of directors, and authorized and directed him to employ such assistants as might be necessary for the producing properties of the corporation, and fix the compensation therefor subject to the approval of the board of directors, and said resolution provided that any contract of employment made by Hess should set forth that the employee consents that he may be discharged at any time by vote of the board of directors or the person employing him, and that the only liability of the corporation shall be for actual compensation for the time such employee has actually been in the service of the corporation. The business of the corporation was producing crude oil.

Under the authority given Hess by the resolution of the board of directors, he, on December 15, 1925, employed W. E. Knappenberger as his assistant as the superintendent of production, with the understanding that Knappenberger should devote his full time to the business of the corporation.

The board of directors approved the employment of Knappenberger by Hess, and in August, 1926, elected Knappenberger a member of the board of directors, at that time fixing his salary at $500 per month.

Albert L. Wilson was a director and general counsel for the corporation at a salary of $1,000 per month.

The evidence introduced by appellees tended to show that it was the custom of the corporation to give employees a vacation with full pay; that the board of directors had discussed this and agreed to it, although no formal resolution was adopted.

The evidence offered by the appellants contradicts this evidence on the part of the appellees and tends to show that there was no discussion by the board, and that it was not the custom to give an employee leave of absence or vacation with pay.

It would serve no useful purpose to set forth the testimony. The testimony is in conflict, and it was a question for the jury to determine what the truth was.

A verdict based on conflicting evidence, if there is any substantial evidence to support it, is conclusive here, although we might believe that the verdict was against the preponderance of the evidence.

It is contended by appellant first that a contract with Knappenberger to give him a vacation on pay would, in effect, be giving away $500 of the money belonging to the corporation to one of its directors, and that such contract would be void. It is argued at some length by appellant that a director cannot contract with the corporation, and numerous cases are cited and relied on by appellant. It appears that several of the directors were employed by the corporation and received salaries.

Mr. Wilson, the general counsel, is a director, has been for a long time, and has been receiving a salary of $1,000 a month. Mr. Hess, as general manager, was a director, and received a salary of $1,000 a month.

The general counsel, Mr. Wilson, was not only a director and stockholder, but held proxies for four-fifths of the stock of the corporation.

The evidence shows that in July, 1928, Knappenberger's father was sick in Pennsylvania, and Knappenberger came to Hess and told him about his father being sick, and that he, Knappenberger, had never taken a formal vacation, and that he would like to take his vaca-

tion and go back to see his father, who was very ill and getting old.

Hess, the president and general manager, had some work to do in Texas in July, and asked Knappenberger to wait until he got back from Texas, and he could then take his vacation. After Hess came back from Texas, Knappenberger, about July 28th, left on his vacation.

Hess testified that when Knappenberger was planning his vacation, he told Knappenberger to go to Judge Wilson and tell him about it, so that there would be no misunderstanding. Witness told Knappenberger that Mr. Wilson understood the conditions, and that Knappenberger went to Wilson's office, which was connected with Hess' office, heard him tell Wilson that Hess had granted him a vacation.

Witness testified that, when Knappenberger took the matter up with Wilson, he was very gracious, and that witness said to Judge Wilson: "You understand he is taking his vacation like all the other employees and officers have taken their vacations." Witness then testified that Wilson had taken vacations on full pay, and that witness also had. He testified Judge Wilson laughed, and said: "Of course, it is expected that he would do that." This evidence on the part of appellees was denied by Mr. Wilson.

Knappenberger went on his vacation and got back to El Dorado on the night of August 26th. Wilson had directed Hess to discharge Knappenberger, but Hess did not do this, but wired him to ascertain when he would return. After his return Wilson told Hess that he intended to take the matter up with the board of directors, and ask them to discharge both Hess and Knappenberger. Suits were brought to prevent this, and for the appointment of a receiver for the corporation, but this suit was withdrawn, and the suit for the purpose of getting a receiver appointed was filed.

The board of directors met in their regular meeting on Monday. Neither Hess nor Knappenberger attended

the meeting. Judge Wilson attended and reported on Hess and Knappenberger, and asked that they be removed from the board of directors, and the board adopted a resolution removing them.

Knappenberger then claimed that appellant owed him salary for the month of August. The corporation declined to pay this salary, and Knappenberger, for the consideration of $1, assigned his claim to Hess.

On August 14, 1931, the appellees, Hess and Knappenberger, filed suit in the Union Circuit Court against the appellant, Oil Fields Corporation, for $500 salary. The appellant, Oil Fields Corporation, filed answer denying the material allegations in the complaint, and alleged that Knappenberger was discharged for inefficiency; denied that it was indebted to appellees or either of them in any sum, and denied that Hess had any authority to give Knappenberger a vacation on pay, and also alleged that, since the removal of Hess and Knappenberger as directors, Hess had been filing fictitious suits against appellant, and that Hess took the assignment from Knappenberger with the full knowledge that appellant was not indebted to Knappenberger in any amount. The assignment showed a consideration of $1, but Hess testified that there were some matters between them; that they had not had a settlement yet. Judgment was asked in favor of Hess for $500 and costs. There was a jury trial and a verdict in favor of Hess for $500. The case is here on appeal.

Counsel have furnished the court with excellent briefs citing many authorities, but we do not deem it necessary to review or call attention to all these authorities.

Appellant, in support of its contention that a director cannot deal with a corporation, calls attention to several authorities. We think, however, the law is settled that a director may be employed and paid a salary to perform services for the corporation. He could not, of course, vote on the proposition himself, but, if the other directors, constituting a quorum, voted to employ him to

perform certain services at a fixed salary, the contract would be valid, and, if he voted himself, it would not make the contract invalid, if a majority other than himself voted for the proposition.

"The rule obtaining in a majority of jurisdictions is that a director may deal or contract with the corporation where he acts in good faith and the corporation is rep-resented by a quorum of disinterested directors or other independent officers or agents authorized to contract for it. Such a contract is not void *per se* nor is it voidable, except for unfairness or fraud, for which it will be closely scrutinized in equity. Similarly an officer may deal with the corporation if his acts are open and fair and known to the directors and stockholders; but all dealing between an officer of a corporation and the board of directors must be scrutinized carefully, and to bind the stockholders must bear evidence of having been in the interests of the corporation." 14a C. J. 118.

In the instant case the directors were employed as general counsel, general-manager and superintendent, etc., and there is nothing in the record to indicate that the director in each instance was not employed by a majority of the board other than himself. Their compensation was fixed, and the board had a right to make these contracts.

"A director or other fiduciary officer of a corporation presumptively serves without compensation. He is entitled to compensation for performing the usual and ordinary duties of his office when and only when there is a valid express agreement therefor; he cannot recover on an implied contract." 14a C. J. 136.

Here all the evidence shows there was an express contract employing Knappenberger at a fixed salary, and nothing to indicate that Knappenberger himself took any part in voting for his employment, or in fixing his salary.

"An officer is without authority to fix or increase his own salary. Directors are precluded from fixing, increasing, or voting compensation to themselves for either past or future services by them as directors or officers,

unless they are expressly authorized to do so by the charter or by the stockholders. The director who claims compensation for his services, being disqualified from voting on the question, if he is necessary to make up a quorum of the board, or if his vote is necessary to the result, the resolution will be void. But where his vote is not necessary to the adoption of such a resolution, it will not necessarily be void, although he may have voted for it, or although he may have been present when the vote was taken." 14a C. J. 143-144.

We think therefore, the general rule is that a director may be employed to perform services for the corporation, to act as general manager or superintendent or to perform other duties. His employment, however, must be voted for by a quorum of the directors other than himself.

There is evidence in this case that officers and employees were granted leave of absence or vacations with pay, and that this was known to and acquiesced in by the board of directors.

This court, in passing on the question of whether a reward offered by the general manager of a railroad company was binding on the company, said: "The proof showed that one who had acted for more than three years under the title and in the capacity of general manager of the road, with the knowledge of the president, had posted the reward. He had received the card offering the reward by express from the office of the vice-president in St. Louis, with instructions to post same. This was done at every station, and the president of the road passed over it as often as every ten days. * * *

"The company can only act through its representatives. The president of the company, as we have said, went over the road every ten days, and these rewards were posted at every station. This and other evidence, such as the fact that the reward came from the office of the vice-president, was entirely sufficient to show that the company had knowledge of the act of Kress in offering

the reward.'' *Arkansas Southwestern Ry. Co.* v. *Dickinson*, 78 Ark. 483, 95 S. W. 802.

It seems to be well settled that a director of a corporation may make a valid contract to perform services for the corporation, and this contract may be made with the general manager if he is authorized, as he was in this case, to hire and discharge employees.

The next question is, can the corporation make a contract allowing the employee compensation for the time he is on a vacation or leave of absence?

''Where an employee is given a vacation with pay, or a leave of absence is granted, or where the employee's absence is involuntary, as where the employer fails to furnish work, the employee is entitled to his wages for the time off.'' 39 C. J. 148; Thompson on Corporations, 3 Edition, vol. 3, 461, § 1869; Fletcher, Cyclopedia of Corporations, vol. 4, 424, § 2766; *M. K. & T. Ry. Co.* v. *Bryant,* (Tex. Civ. App.) 178 S. W. 685.

If the testimony of appellees is true, then the board of directors fixed the compensation of Knappenberger, and also authorized pay during leave of absence or vacation. As we have already said, this evidence is contradicted by the evidence offered by appellant, but it was a question of fact properly submitted to the jury, and its verdict on these matters is conclusive. There is no question in this case of giving away the company's money. Of course, the board would have no right to do this, but they may have thought they would get better service from an employee by giving him a vacation on pay than they would otherwise. Many corporations permit their employees to take vacations on pay, and doubtless believe that this secures better service, and is not giving away money of the corporation.

As we have already said, the law is well-established that a director may make a valid contract with a corporation at a salary fixed by it. He cannot, of course, himself vote for his employment nor in fixing his salary. The

law seems also to be well settled that an employee may be granted a vacation on pay.

Whether the corporation did employ Knappenberger, and whether they agreed to give him a vacation on pay, were questions for the jury.

There was substantial evidence to support the verdict, and the judgment is affirmed.