COOK *v.* MALVERN BRICK & TILE COMPANY.

4-4770

Opinion delivered October 25, 1937.

*Rose, Hemingway, Cantrell & Loughborough,* for appellants.

*A. T. Davies* and *House, Moses & Holmes,* for appellees.

MEHAFFY, J. The appellants filed in the Pulaski chancery court the following complaint:

"The defendant is a domestic corporation engaged in the business of manufacturing and selling brick and tile. Plaintiff, Mrs. Essie Bordis Cook, is administratrix of the estate of A. B. Cook, deceased. The defendant, Malvern Brick & Tile Company, is authorized to issue and has issued 1,000 shares of common stock owned as follows:

"Plaintiff George B. Cox .............................. 75 shares
Plaintiff, Mrs. Essie Bordis Cook, as
        administratrix aforesaid ................405 shares
Defendant George A. Callahan............305 shares
Defendant Charles B. Bryan, as
        administrator of the estate of
        C. A. Bryan, deceased......................... 70 shares
Defendant Charles G. Bryan in-
        dividually ................................................. 25 shares
Defendant B. J. Chamblin........................... 20 shares
G. L. Callahan ...........................................100 shares

"Defendant Charles G. Bryan is the administrator of the estate of C. A. Bryan, deceased. At the annual meeting of the stockholders of the defendant, Malvern Brick & Tile Company, held in January, 1935, defendants, George A. Callahan, Charles G. Bryan, as administrator of the estate of C. A. Bryan, deceased, Charles G. Bryan, individually, and defendant B. J. Chamblin, owning and controlling a bare majority of the outstanding stock of the corporation, conspired to control and operate it for their individual selfish interests and elected themselves directors of the corporation, giving themselves a majority of the board of directors. They, also, elected as directors the plaintiffs, George B. Cox and Mrs. Essie Bordis Cook.

"The defendant, George A. Callahan, is well advanced in years. He resides in the city of Hot Springs and has had no experience in the management or operation of a brick and tile manufacturing plant and the sale of its products. He is president and general manager of the Quapaw Bath House in Hot Springs, has his office in

Hot Springs, devotes practically all of his time, which he devotes to business, to its management, and receives a substantial salary therefor. His son, G. L. Callahan, twenty-seven years of age, was employed by the Malvern Brick & Tile Company as shipping clerk at a salary of $100 a month. Prior to the death of A. B. Cook in 1934, he had managed the business of the Malvern Brick & Tile Company successfully and well. Following his death, the plaintiff, George B. Cox, was made manager of the business at a salary of $175 a month. He devoted all of his time to the business, and, having a full knowledge thereof, managed it so well that in the year 1935 the company was able to and did declare and pay a dividend on the stock of 30 per cent. At a meeting of the stockholders in January, 1935, and in pursuance to the policy of defendants to operate the business for their selfish individual interests, they refused to permit plaintiff, George B. Cox, to continue as manager, but instead installed George A. Callahan as manager, knowing that he was without experience in such work and that because of his health and business activities he had neither the strength nor the time to manage said business.

"In April, 1936, the defendants constituting a majority of the board of directors, over the protests of the plaintiffs, for the purpose of effectuating their continued control over the operations of the business, for their selfish interests, attempted to increase their own salaries to be paid them by the corporation in the following amounts and constituting the following per cents. of their prior salaries: George A. Callahan from $150 a month to $200 a month, an increase of 33 1/3 per cent.; Charles G. Bryan from $175 a month to $325 a month, an increase of 85.70 per cent.; B. J. Chamblin from $215 a month to $300 a month, an increase of 39.53 per cent. They, also, arranged to increase the salary of G. L. Callahan, son of George A. Callahan, from $100 to $150 a month, an increase of 50 per cent. They also increased the salary of A. F. Henry, a salesman, from $125 a month to $200 a month, an increase of 60 per cent. Defendant Charles G. Bryan was employed as bookkeeper and plant superintendent.

He had ample time to perform his work, but, in addition to increasing his salary 85.70 per cent. the individual defendants employed for him an assistant bookkeeper at a salary of $55 per month. G. L. Callahan had ample time to do his work as shipping clerk, but in addition to increasing his salary 50 per cent. they employed an assistant for him at a salary of $55 per month. Salesman A. F. Henry had been employed by the company for considerable time and was entitled to some increase in salary, but not to the increase of 60 per cent. which was given him. None of the increases were justified by the work or the ability of the respective persons whose salaries were increased, and no increase in the salaries, except possibly a slight increase in the salary of A. F. Henry, was at all justified by the work they did or the responsibility they had, or their ability.

"The action of the defendants who, as directors, attempted to increase their own salaries is void. Each of the increases in salary has been paid every month, beginning in May, 1936, and there has been paid the defendant, George A. Callahan, for fictitious expense accounts as general manager of the Malvern Brick & Tile Company to this date $300; to the defendant, Charles G. Bryan, on the void raise of his salary, $900; and to B. J. Chamblin on the void raise of his salary $510. The said increases in the salaries of the three defendant directors are void, as an attempted increase of their own salaries by said directors, arranged and carried through by them, and their said raises in salaries and the raises in the salaries of the said G. L. Callahan and A. F. Henry increased the salaries of each of said persons beyond what they were justly entitled to for their positions and work they did. The increase in the salary of George A. Callahan of $50 per month is described on the books as an expense account, but as a matter of fact the said George A. Callahan was put to no substantial expense on account of the business of the company, and any small expenses such as he might incur were only occasional as traveling expenses and telephone calls and were more than amply covered by the salary of $150 per month allowed and paid

to him as president of the company. As a matter of fact, as president and ostensible manager of the company, the said George A. Callahan during this year has devoted only a nominal amount of his time to the business of the company. He resides in the city of Hot Springs and devotes practically all of his business time to the management of the Quapaw Bath House there. He is not in Malvern, except to attend the monthly meeting of the board of directors, and then for not more than an hour and an occasional trip from Hot Springs to Malvern between meetings of the board of directors and on which he spends less than an hour and his said salary of $150 per month, as president of the company, should, for the best interests of the company, be discontinued.

"The plaintiffs have not requested the board of directors of the corporation to institute this action for and on its behalf, because the affairs of the corporation are under the dominion and control of the said majority of the board of directors, and the said majority of the board of directors would be defendants in such an action, and the litigation would be in their control and they would be opposed to its success. Neither the plaintiffs nor the defendant corporation have any plain, adequate or speedy remedy at law. The action of the defendant directors in attempting to raise their own salaries and in raising the salaries of the other employees, as mentioned, constitutes an injustice and fraud upon the defendant corporation and upon the plaintiffs as stockholders therein, and has the effect of unlawfully diverting the corporation's assets and revenues to the defendants in large part and to others, and wastes a substantial portion of the corporation's assets and revenues which should be disbursed to the stockholders ratably, or held to their benefit."

The prayer was for judgment for the use and benefit of the Malvern Brick & Tile Company, and that the defendants be restrained and enjoined from further paying the amount of the officers' purported raise in salaries.

Service was had upon George A. Callahan in Garland county, where he resided; on Charles G. Bryan in Hot Spring county where he resided; on B. J. Chamblin

in Pulaski county, the county of his residence, and upon the defendant, Malvern Brick & Tile Company, by serving B. J. Chamblin as its agent in charge of its office in Pulaski county.

Appellees filed motion to quash service and summons upon the corporation and alleged that the corporation was organized under the laws of Arkansas with its domicile and principal place of business in Malvern, Hot Spring county, and that it had no principal office, branch office or place of business in Pulaski county, and its chief officer or any other officer does not live in Pulaski county; that it does not maintain a branch office or any other place of business in Pulaski county, Arkansas: second, that the action against the defendants is a matter which concerns solely and only the internal affairs of the corporation, and that this court is without jurisdiction of the cause of action; that the defendant, B. J. Chamblin, is merely a salesman for said corporation, and that service was not had upon any officer of the corporation in Pulaski county.

B. J. Chamblin testified that he was salesman for the Malvern Brick & Tile Company and he lived in Little Rock; that the plant of the Malvern Brick & Tile Company and main office is at Malvern; that it has a display room in Little Rock; they had stock in the sense that they frequently make deliveries to Little Rock, and for some reasons there may be rejections in which case they had to do something with it; that it was too expensive to take it back to Malvern, and they place it on the yard in North Little Rock; the brick is not originally sent here for resale, it is sent from Malvern on a definite order; witness takes orders as agent or salesman; such orders are sent to Malvern for confirmation; the company's books are kept at Malvern and stockholders meetings are held there; witness has been sales manager about eight years, and was sales manager at the time summons was served; the company has an office at 218 West Second street in Little Rock and witness is in charge of the office; witness identified a photograph as a correct picture of the office.

The photograph was introduced and the sign on the windows is "Malvern Brick & Tile Company."

Witness further testified that the company has had this same office for years, and that the rent on the office is paid by the Malvern Brick & Tile Company; the office telephone is listed in the directory under the same name; the company pays the telephone bill and pays all expenses incident to the maintenance of that office; the company also maintains in Pulaski county a brickyard to this extent, the place where is stored rejected material in North Little Rock with E. M. Merritt; the company does not pay rent, but permits the Malvern Brick & Tile Company to unload material there for any hauling they have that they can throw to him, and that has been the status for eight years. The company itself does not send any material there directly from the plant, except in rare instances when they may have an order for a few hundred brick from some lumberyard, up at Harrison or some other place where they want a truck here to pick it up and haul it up to Harrison. The company at Malvern does send brick from the brickyard up to this yard in North Little Rock where it is picked up by other parties. The brickyard is listed in the telephone directory under the name of Malvern Brick & Tile Company. When a customer comes into the Little Rock office and makes a large order, witness sends the order in to the plant and the bookkeeper fills in all the information as to consignee, etc., and this is called acknowledgment. A copy is sent to the buyer and also to witness, that he may recheck it. There are four steel filing cabinets in the Little Rock office; in one of the files there is a permanent file, marked "Checks received"; there is listed the checks received for payments of orders; the Little Rock office has authority to receive payment for material and may receive checks or cash. Witness has authority to give customers a receipt; there are no other selling agencies or offices in Arkansas other than the Little Rock office; as sales manager, witness sends material to all selling outlets or agencies of the company throughout the different states where it does business; the main part of witness' duties and employ-

ment is selling the output of the Malvern plant; the office in Little Rock accounts for the great bulk of the output of the Malvern plant; it accounts for virtually all the brick manufactured by the company except that sold in the immediate vicinity of the plant. Witness is required to and does devote all of his time to his duties. It is a part of his employment and duty to call on all past-due accounts, and attempt to collect them; it sometimes happens that a purchaser may decline to take the delivery and, in that event, it is witness' duty to dispose of those rejected and get rid of them in the best way he can; wherever they have a rejection in Louisiana or elsewhere, witness may go down and negotiate about the disposing of the property; if they have something in the North Little Rock yard that is rejected, witness gets rid of it; witness testified that you could come to the office in Little Rock and that he would sell tile that is on hand in the brickyard, and the Malvern office would not know anything about it until the transaction was completed; in handling the duties pertaining to his office witness has some discretion in what to do. The company furnishes witness an automobile and pays for its maintenance and expense; he has authority to charge gasoline, oil, etc., to the company and to charge repairs to the company.

George B. Cox testified that he had been connected with the Malvern Brick & Tile Company since about 1928; that Mr. Chamblin is sales manager, and, unless his authority has recently been revoked, he has absolute authority to bind the company on contracts for the sale of its products, and there is nothing conditional about his authority.

At the conclusion of the testimony counsel for appellees made a motion to dismiss the complaint as to the Malvern Brick & Tile Company for the reason that no relief was asked therein, no cause of action stated against the company, and that it was not a party nor a necessary party and the action is a matter which concerns solely and only the internal affairs of the corporation, and the court is without jurisdiction of the cause of action.

The court granted this motion and dismissed the cause as to the Malvern Brick & Tile Company. The court, also, quashed service of summons upon the Malvern Brick & Tile Company and dismissed the complaint for the reason that no relief was asked against the company and that it was not a necessary or proper party. The complaint of the plaintiff was dismissed by the court for the reason that the cause stated concerns solely and only the management of the internal affairs of the corporation which has its domicile without the jurisdiction of this court.

The case is here on appeal.

Section 1152 of Crawford & Moses' Digest provides that where a corporation, foreign or domestic, keeps or maintains in any of the counties of this state a branch office or other place of business, it shall be subject to suits in any of the courts in any of said counties where said corporations so keep or maintain such office or place of business, and service of summons or other process of law from any of said courts held in said counties upon the agent, servant or employee in charge of said office or place of business shall be deemed good and sufficient service upon said corporations, and shall be sufficient to give jurisdiction to any of the courts of this state held in the counties where said service of summons or other process of law is had upon said agent, servant or employee.

It appears from the evidence in this case that, except for the manufacture of brick and tile and the sale of bricks and tile in the immediate vicinity of the plant, practically all of its business is transacted in Little Rock, and the agent here, according to the testimony, has absolute authority to conduct the business. This office in Little Rock also has charge of the yard in North Little Rock.

We do not think that the corporation could do the business in Little Rock that the evidence shows that it does do through an agency for that purpose, without, at the same time, being here for the purpose of service, and that the service on the agent in Little Rock in charge of the office, was sufficient service on the corporation. *Ark*

*ansas P. & L. Co.* v. *Hoover,* 182 Ark. 1065, 34 S. W. (2d) 464; *Ramey* v. *Baker,* 182 Ark. 1043, 34 S. W. (2d) 461; *Mississippi River Fuel Corp.* v. *Senn,* 184 Ark. 554, 43 S. W. (2d) 255; *Terry Dairy Co.* v. *Parker,* 144 Ark. 401, 223 S. W. 6; *Berryman* v. *Cudahy Pack. Co.,* 189 Ark. 1151, 76 S. W. (2d) 956; *Ft. Smith Lbr. Co.* v. *Shackleford,* 115 Ark. 272, 171 S. W. 99.

In the cases cited the law seems well settled, and § 1152 of. Crawford & Moses' Digest was construed in those cases, and we do not deem it necessary to discuss the matter further here, as under those cases the service in this case is valid. In fact, the evidence is much stronger in this case as to the corporation's doing business in Pulaski county than the evidence in some of the cases cited.

The court dismissed the complaint for the reason that the cause of action concerned the internal affairs of the corporation only. The complaint stated that the directors had voted an increase of their salaries, and the court having jurisdiction of all the parties, it should have tried the case.

The complaint shows, and it is undisputed, that when the directors increased their salaries, there were but four directors present, and one of them voted against the increase. It, therefore, appears that the three directors increased their own salaries.

This court recently quoted with approval from 14A C. J. 118 the following: "The rule obtaining in a majority of jurisdictions is that a director may deal or contract with the corporation where he acts in good faith and the corporation is represented by a quorum of disinterested directors or other independent officers or agents authorized to contract for it. Such a contract is not void *pér se* nor is it voidable, except for unfairness or fraud, for which it will be closely scrutinized in equity. Similarly an officer may deal with the corporation if his acts are open and fair and known to the directors and stockholders; but all dealing between an officer of a corporation and board of directors must be scrutinized care-

fully, and to bind the stockholders must bear evidence of having been in the interests of the corporation." * * *

"An officer is without authority to fix or increase his own salary. Directors are precluded from fixing, increasing, or voting compensation to themselves for either past or future services by them as directors or officers, unless they are expressly authorized to do so by the charter or by the stockholders. The director who claims compensation for his services, being disqualified from voting on the question, if he is necessary to make up a quorum of the board, or if his vote is necessary to the result, the resolution will be void. But where his vote is not necessary to the adoption of such a resolution, it will not necessarily be void, although he may have voted for it, or although he may have been present when the vote was taken." 14A C. J. 143-144. *Oil Fields Corporation* v. *Hess,* 186 Ark. 241, 53 S. W. (2d) 444.

The suit was properly brought in equity. 4 Fletcher Enc. Corporations 4038; *Redbud Realty Co.* v. *South,* 96 Ark. 281, 131 S. W. 340; *Redbud Realty Co.* v. *South,* 153 Ark. 380, 241 S. W. 21.

The corporation was a necessary party, because, if the salaries had been wrongfully paid and a recovery was had, it would be the property of the corporation. 14A C. J. 160; 7 R. C. L. 490.

The decree of the chancery court is reversed and the cause remanded with directions to overrule appellees' motion and proceed with the trial of the cause not inconsistent with this opinion.