Mortensen *v.* Ballard.

4-9389                                           236 S. W. 2d 1006

Opinion delivered March 5, 1951.

*Hays, Williams & Gardner,* for appellant.

*Reece Caudle* and *Robt. J. White,* for appellee.

Ed. F. McFaddin, Justice.   This is the second appeal in this case: see *Mortensen* v. *Ballard,* 209 Ark. 1, 188 S. W. 2d 749, wherein the complaint is set out *in extenso.* On September 5, 1944, Mortensen filed suit seeking: (a) to have the defendant, Evelyn Pearson Ballard, declared a trustee for him in the real estate and corporate stock of the Pearson Hotel Company, and (b) judgment against the Pearson Hotel Company (a corporation) for money alleged to be due him for services rendered.   Demurrers were sustained by the trial court; and on the first appeal

we held that the complaint stated a cause of action; and we remanded the cause to the Chancery Court for further proceedings.

Thereupon, each defendant, by separate pleading, denied the material allegations of the complaint, denied plaintiff's claim of a partnership between himself and Evelyn Pearson Ballard, and affirmatively pleaded limitations, laches and estoppel against any claim of the plaintiff. The taking of depositions extended over several years, resulting in a transcript in excess of 700 pages and printed briefs totaling 291 pages. The Chancery decree was in favor of the defendants, and the plaintiff has appealed. We will refer to the parties as they were styled in the lower court; and will separately discuss plaintiff's case against each of the defendants.

I. *Mortensen's Claim Against the Defendant, Evelyn Pearson Ballard.* We hold that the plaintiff's alleged cause of action is barred by limitations, even assuming— but not deciding—that he established his case on other issues. Mortensen testified that he and Evelyn Pearson Ballard were partners in the hotel business in Texas from 1924 to 1926, and that from the assets of the Texas partnership, the Pearson Hotel in Russellville had its inception as a partnership in 1926. It was shown that a partnership income tax return was made to the United States Government in 1926 and 1927 for the Pearson Hotel of Russellville, showing the plaintiff, Mortensen, and the defendant, Evelyn Pearson (now Ballard) as equal partners. But on June 21, 1927, the partners formed a corporation to take over the partnership assets in order to refinance the hotel building in Russellville against the pressing claims of creditors.

So the corporation, "Pearson Hotel Company," was organized; and many creditors took preferred stock in the corporation in lieu of claims against the former partnership. The common stock of the corporation, consisting of 100 shares, was issued: 90 shares to the defendant, Evelyn Pearson (now Ballard); 2 shares to the plaintiff, Mortensen; and 2 shares to each of four other individuals. The plaintiff claims that an agreement was made between

him and Evelyn Pearson Ballard that she would hold, as trustee (equally for himself and her), the said 90 shares issued to her. But the plea of limitations arises at this point: because even assuming a trust relationship, there was nevertheless a definite repudiation of the trust brought home to the plaintiff, and then an unreasonable delay thereafter before the filing of this suit.

The plaintiff testified that his first information of such denial of the alleged trust relationship was in 1944, when he talked to Evelyn Pearson Ballard, and she told him that he had no interest in the stock. The defendant, Evelyn Pearson Ballard, testified that the plaintiff never had any interest in the 90 shares of stock and she had frequently so informed him. Such is the testimony between the parties. There is, however, overwhelming testimony from disinterested witnesses supporting Evelyn Pearson Ballard. One such witness was W. O. Cooper, who testified that sometime in 1927, after the organization of the corporation, he went to Russellville to see Mortensen in an effort to collect a judgment that Cooper's associate held against Mortensen; that Mortensen then denied any ownership in the hotel corporation except the two shares in his name; and that Cooper went to Evelyn Pearson Ballard and received verification of Mortensen's statements. Later, Cooper, Morgan, Mortensen and Ballard were all present, and defendant stated that Mortensen had no interest whatsoever in the hotel property or the corporation, except the two shares in his name. That was in 1927. Furthermore, Judge J. B. Ward[1] testified:

"Q. With reference to June, 1927, when the corporation was formed, when did you first learn that Mr. Mortensen had claimed or was claiming any interest in the property or the stock of the corporation?

"A. I wouldn't be sure about that. It was some time afterwards, a year or maybe it might have been less or it might have been more. There seemed to have been

[1] Judge Ward is now the Chancellor of the Eighth Chancery District, of which Pope County is a part, and because he was a witness in this case, Chancellor Wofford of the Tenth Chancery District tried this case.

some trouble down there. I don't know just all the details about it. Mr. Mortensen talked to me about it and claimed at that time to own an interest in the hotel.

"Q. Did he state whether or not Mrs. Ballard had denied to him that he had any interest in the property?

"A. He said she was denying that he had any interest and wanted to know what to do.

"Q. That was about a year after the formation?

"A. That was about a year, maybe not quite a year and maybe a little over a year.

"Q. What did you advise him?

"A. I advised him that I was representing the hotel company at that time, and if he had any interest he had better secure the services of a lawyer to protect his interest.

"Q. Have you had more than one such conversation with him?

"A. I had a good many.

"Q. What did he state with reference to Mrs. Pearson admitting or denying his interest in the property or stock of the corporation?

"A. All those conversations were based on the theory that she was denying that he had any interest in the property, and wanted to protect it."

The law is well settled that limitation begins to run, even as against an express trust, when knowledge is brought home to the beneficiary of the trustee's repudiation of the trust and that the trustee is holding adversely to the beneficiary. See *McGaughey* v. *Brown,* 46 Ark. 25; *Leach* v. *Moore,* 57 Ark. 583, 22 S. W. 173; and *Sprigg* v. *Wilmans,* 204 Ark. 863, 165 S. W. 2d 69. In 34 Am. Jur. 140, the holdings are summarized:

"It has repeatedly been affirmed that when a trustee of an express trust denies the trust and assumes the absolute ownership of the property, and his claim is brought home to the *cestui que trust,* a cause of action

exists in favor of the latter from the time he receives notice of the repudiating by the trustee, and the statute begins to run from that time, for such denial and adverse claim, together with communication of knowledge thereof, constitute an abandonment of the fiduciary character in which the trustee has stood to the property."

In 1927 actual knowledge was brought home to the plaintiff, Mortensen, that the defendant, Evelyn Pearson Ballard, had repudiated any possible trust relationship regarding the 90 shares of stock in the Pearson Hotel Company, and that she had openly stated that it was her own stock. Mortensen then waited from 1927 until 1944 —17 years—before filing this suit to have the trust declared. He is therefore barred by limitations.

II. *Mortensen's Claim Against the Pearson Hotel Company (the Corporation) for $18,335.15 for Services Rendered.* We conclude that Mortensen is not entitled to recover, because he failed to show that his services were worth more than the total of the items which he admitted receiving from the corporation. Mortensen based his claim on a resolution purportedly adopted on August 12, 1929, at a meeting of the Board of Directors of the corporation. The resolution stated that Mortensen would receive a salary of $250 per month for services as assistant manager; but this purported resolution is void: there were five directors of the corporation, and at the meeting of August 12, 1929, there were present only Mortensen and two other directors, so his presence was required to constitute a quorum.

In *Oil Fields Corp.* v. *Hess,* 186 Ark. 241, 53 S. W. 2d 444, and again in *Cook* v. *Malvern Brick & Tile Co.,* 194 Ark. 759, 109 S. W. 2d 451, we quoted with approval from Vol. 14a C. J. 136, as follows:

" 'An officer is without authority to fix or increase his own salary. Directors are precluded from fixing, increasing, or voting compensation to themselves for either past or future services by them as directors or officers, unless they are expressly authorized to do so by the charter or by the stockholders. *The director who claims com-*

*pensation for his services, being disqualified from voting
on the question, if he is necessary to make up a quorum
of the board, or if his vote is necessary to the result, the
resolution will be void.' "* (Italics our own.)

To the same effect, see the Annotation in 175 A. L. R. 577,
entitled "Participation by corporate director in vote or
meeting fixing compensation for his own services,"
wherein the holdings are summarized:

"In the absence of authorization by statute or by the
corporate charter or bylaws a director cannot be counted
in order to constitute a quorum necessary to act on a
proposition to fix his salary or compensation."

When we strike the resolution of August 12, 1929—
as we must under the authorities cited—then Mortensen
may recover for his services on a *quantum meruit* basis
and not at the rate of $250 per month. In 13 Am. Jur.
976, the rule is stated:

"The rule to be deduced from the modern and best
considered cases is that a person, although a director or
other officer of a corporation, may recover the reasonable
value of necessary services rendered to a corporation,
entirely outside the line and scope of his duties as such
director or officer, performed at the instance of its offi-
cers, whose powers are of a general character, upon an
implied promise to pay for such services, when they were
rendered under such circumstances as fairly to indicate
that the parties intended and understood they were to be
paid for, or ought to have so intended and understood."

See, also, *Stout* v. *Oates,* 217 Ark. 938, 234 S. W. 2d 506
(decision of December 11, 1950).

What is the evidence as to the services rendered by
Mortensen? He testified that he was assistant manager
of the hotel, and also serviced the elevator and other elec-
trical equipment; that he worked at the hotel from 1929
until 1934; that from 1934 to 1939 he was employed by the
Works Progress Administration of the United States

Government[2]; and that in 1939 he returned to the hotel and worked there until 1944. As against the services rendered, Mortensen admitted that he was all the time furnished his room and meals, and that his ''laundry bills, medical bills and other incidental expenses'' were all the time paid by the hotel. Notwithstanding all that he received, Mortensen contends that the hotel company owed him a balance of $12,428.19 in 1939; so the excess of his claimed salary above his furnished items from 1939 to 1944 would calculate $5,906.96, in order to make the total of $18,335.15, as claimed.

As shedding light on Mortensen's claim against the Pearson Hotel Company, we mention a significant portion of the evidence. In 1936 the Pearson Hotel Company obtained a loan from the Reconstruction Finance Corporation. Mortensen was president of the hotel company at that time, even though he was employed by the Works Progress Administration. The Reconstruction Finance Corporation required of the hotel company a signed statement ''relating to compensation of officers, directors, employees and agents of the Pearson Hotel Company.'' Mortensen signed such instrument which listed the

---

[2] Here is his testimony:

''Q. During the time you were assistant manager were you away from the hotel, and if so, explain why and for how long?

''A. I was away most of the time from 1934 to 1939 inclusive. The depression came on in 1929 and 1930, but by 1933 business was bad everywhere. . . . The hotel business was bad and barely able to meet the financial obligation already. And so, I took a job with the W.C.A. to superintend some remodeling work out here at Tech. That was in 1933. And I received $100 a month for that. . . .

''Q. During that time did you come back to the hotel and service the various electrical equipment of the hotel just as you had done?

''A. During that time I stayed at the hotel and went out to the Tech buildings during the day time. I was at the hotel in and out. I didn't have to be on the job permanently. But in 1934 I accepted a job with Public Works Administration known as the P.W.A. at an increased rate of pay. From then on, that was the first of August, 1934—my first assignment was Fayetteville, Arkansas—from then on up until the agency ceased functioning I was all around Russellville at different points, and I would come in here on week ends and whenever they notified me that something that was necessary for me to see about. At the same time, I kept looking after the equipment and checking it over when I would come in.

''Q. Since you returned from working for the Government have you performed all the regular duties of assistant manager of the hotel?

''A. I performed the same duties I did before, to the extent of my physical ability. The rheumatism had taken charge of me and it was pretty bad.''

monthly compensation of the manager, each clerk, and all waitresses, bellboys and kitchen help. The manager's salary was fixed at $150 a month for Mrs. Ballard. Mortensen's name is not listed as having any claim for back compensation, or as expecting any monetary compensation for services to be rendered to the hotel company in the future; and the hotel company and its officers agreed in the instrument:

"So long as the undersigned is indebted to the RFC Mortgage Company, the undersigned will not increase the compensation (either directly or through appointment to any additional office or position) of any of its officers, directors, employees or agents above the respective amounts shown on such schedule, . . ."

Thus in 1936 Mortensen did not make any claim to the Reconstruction Finance Corporation for back salary and agreed with that agency that he would not claim any salary. While the Reconstruction Finance Corporation is not a party to this case, we nevertheless consider the foregoing agreement as highly significant.

From a review of all of the evidence, we are convinced that Mortensen rendered his services to the hotel company to equal his room, meals, laundry, medical bills and his other bills from various merchants in Russellville, all of which he admitted were paid by the hotel company. At all events, when Mortensen's services are measured on a *quantum meruit* basis, we cannot say that the finding of the Chancery Court in favor of the hotel company is contrary to the preponderance of the evidence.

The decree is in all things affirmed.